## COLUMBIAN NATIONAL LIFE INSURANCE CO. *v.* MULKEY.

1. Where the Court of Appeals certifies to the Supreme Court a question of law necessary for the decision of the case by that court, and the record accompanying the certified question shows that the Court of Appeals had jurisdiction of the case at the time it ordered the certification of the question, this court will not refuse to answer the question certified.

2. In an action on an insurance policy, the defense that the contract of insurance is void because obtained by fraud practiced on the insurer by the insured may be pleaded without repaying or offering to repay the premiums or any part thereof received by the insurer on the policy.

OCTOBER 21, 1916. ADHERED TO ON REHEARING, DECEMBER 14, 1916.

The Court of Appeals desires instructions from the Supreme Court upon the following questions involved in this case (No. 6264):

"1. Where it is sought to interpose the defense that the contract of insurance was void because it was obtained by fraud, are the provisions of section 4305 of the Civil Code applicable in the same manner as to other contracts; and can the defense that the policy of insurance was obtained by fraud be presented where it appears that there was no restoration of such thing of value as was received by the company in exchange for the policy, nor any effort to restore, prior to that included in the defendant's answer?

"2. Can a plea that a contract of insurance was obtained by fraud be presented without any previous effort to restore the status quo, though there be included in the plea an offer to return? Is it necessary to make such an offer at any time, as a prerequisite to asserting the invalidity of the policy on account of fraud?"

*Colquitt & Conyers,* for plaintiff in error.

*Horton Brothers* and *Anderson & Rountree,* contra.

FISH, C. J. 1. The first headnote needs no elaboration.

2. Both questions propounded to this court by the Court of Appeals may be briefly stated as follows: In an action on an insurance policy, can the defendant plead, without repayment of the premiums, that the policy is void because obtained by fraud practiced by the insured on the insurer? Thus stated, we have no difficulty in answering the question in the affirmative. It does not appear from the questions propounded what was the nature of the fraud which induced the insurance company to issue the policy;

nor is there anything in the questions to indicate that the policy sued on contained any stipulation to the effect that the policy should be void if procured by fraud on the part of the insured. The question may, however, be satisfactorily answered when considered in connection with certain provisions contained in the Civil Code of this State, which are as follows: § 2479. "Every application for insurance must be made in the utmost good faith, and the representations contained in such application are considered as covenanted to be true by the applicant. Any variation by which the nature, or extent, or character of the risk is changed will void the policy." § 2480. "Any verbal or written representations of facts by the assured to induce the acceptance of the risk, if material, must be true, or the policy is void. If, however, the party has no knowledge, but states on the representation of others, bona fide, and so informs the insurer, the falsity of the information does not void the policy." § 2481. "A failure to state a material fact, if not done fraudulently, does not void; but the willful concealment of such a fact, which would enhance the risk, will void the policy." Section 2483. "Willful misrepresentation by the assured, or his agent, as to the interest of the assured, or as to other insurance, or as to any other material inquiry made, will void the policy." The declarations in the sections just quoted clearly establish the rule that the insurer retains the premium in all cases of actual fraud on the part of the insured or his agent in procuring the policy. In *Beasley* v. *Phœnix Insurance Co.*, 140 Ga. 126 (78 S. E. 722), the action was upon a fire-insurance policy which contained stipulations to the following effect: Concurrent insurance was permitted on the stock of goods upon which the policy was issued, to the amount of one thousand dollars; but no additional insurance for a larger amount should be taken on the goods by the insured, except by the consent of the insurance company, acquired by compliance with certain requirements. The defendant company, among other things, pleaded, that, contrary to express stipulations in the policy sued on, the insured had procured additional concurrent insurance on the stock of goods, for a larger amount than one thousand dollars, and that this had been done without the knowledge or consent of the defendant. On the trial it appeared that such additional insurance had been taken on the stock of goods, and to an amount greater than one thousand dol-

lars, without the knowledge or consent of the defendant, but that the agent of the defendant, who was instrumental in having the policy issued, had knowledge, ten days before the stock of goods was destroyed by `fire, that such additional insurance had been placed on the stock of goods. It was held that under such facts the defendant company was not estopped from urging the defense set up, to the effect that the stipulations of the policy as to additional insurance had been violated; and that it was not necessary for the defendant to return the unearned portion of the premiums on the policy before it could rely upon such defense. Section 2489 of the Civil Code was cited, which provides that "A second insurance on the same property, unless by consent of the insurer, voids the policy." While the *Beasley* case does not present the exact question propounded by the Court of Appeals, it does decide that in a suit on a policy of insurance, which is void, it is not necessary, as a condition precedent to setting up its invalidity, that a tender of the premiums received is necessary.

The general doctrine laid down by textbook writers is that an unintentional breach of warranty on the part of the insured does not authorize a retention of the amount paid as assessments or as premiums, if no risk has been run by the insurer; but actual fraud in the inception of the contract on the part of the insured forfeits his claim to a return of assessments or premiums, notwithstanding the fact that no risk has ever attached. 2 Cooley's Briefs on Insurance, 1037, 1048; Niblack, Acc. Ins. & Ben. Soc. § 282; Vance, Ins. §§ 85, 86; 2 Joyce, Ins. §§ 1398, 1406; Cook, Life Ins. 193; 1 May, Ins. (3d ed.) § 4; 1 Wood, Ins. (2d ed.) § 109; Angell, Fire & Life Ins. (2d ed.) § 404; 2 Phillips, Ins. (5th ed.) § 1841; 2 Marshall, Ins. 652; 1 Parsons, Marine Ins. 560; 2 Clement, Fire Ins. 538. In line with the general rule above stated is Taylor *v.* Grand Lodge, 96 Minn. 441 (105 N. W. 408, 3 L. R. A. (N. S.) 114). In that case Elliott, J., delivered a very able and exhaustive opinion on the subject, and seemingly cited and discussed all decisions previously rendered by the courts in the United States, as well as the English decisions. The learned annotator in 3 L. R. A. (N. S.), supra, referring to the Taylor case says: "The effect of the fraud of an applicant for membership in a benefit insurance order or society on the obligation of the society to return what has been paid as assessments or dues before

it can claim the contract unenforceable has been given such thorough treatment by the court in Taylor *v.* Grand Lodge A. O. U. W., that little is left to be said, and a search has discovered no cases bearing on that subject which the court has not discussed in the opinion." Among the cases cited and discussed in the Taylor case is the well-considered case of Blaeser *v.* Milwaukee Mechanics Mut. Ins. Co., 37 Wis. 31 (19 Am. R. 747), wherein it was held that in all cases of actual fraud on the part of the insured, committed either by himself or his agent, the insurer shall retain the premium. In the opinion Cole, J., said: "There is another portion of the charge excepted to which we deem it proper and necessary to notice, which is where the court instructed the jury that, although there might be misrepresentations in the application, yet the company could not avail itself of them in an action upon the policy, without first tendering back to the insured the amount of premium paid. The learned circuit judge held upon this point that the rule in regard to the rescission of contracts for fraud was applicable; that when a party seeks to avoid a contract on that ground, he must put the other party to the contract back to the condition in which he stood prior to the transaction. This is undoubtedly a well-settled rule in regard to the rescission of contracts; but we think it has no application to the case before us, and for this reason: by the conditions of the policy itself, any fraudulent misrepresentation of a fact material to the risk avoids the contract. It is not necessary that the company refund the premium in order to avail itself of this stipulation in the policy. The representations in the application constitute the basis upon which the risk is taken, and the policy declares that, if there is any misrepresentation or concealment, the insurance shall be void and of no effect. The company enters into the contract relying upon the truth of the representations; and if it has been misled or deceived upon matters material to the risk, it may well say that no contract was ever made; that there was no concurrence of assent upon the same facts." In Campbell *v.* New England Mut. Life Ins. Co., 98 Mass. 381, Wells, J., said: "Representations to insurers, before or at the time of making a contract, are a presentation of the elements upon which to estimate the risk supposed to be assumed. They are the basis of the contract, its foundation, on the faith of which it is entered into. If wrongfully presented in any respect material to the risk,

the policy that may be issued thereupon will not take effect. To enforce it would be to apply the insurance to a risk that was never presented. These remarks are sufficient to show that the position of the defendant in attempting to defeat the action on the ground that fraudulent representations were made in the application is essentially different from that held by a party who seeks to rescind a contract on the ground of fraud." In Thompson v. Travelers' Ins. Co., 11 N. D. 274 (91 N. W. 75), the suit was upon a life-insurance policy, and one of the questions for decision was whether the defendant was bound to return the premiums in order to maintain the defense set up. The court said: "The case is not parallel as to its facts with one where the premium was paid by an insured upon a policy which the insurer is endeavoring to cancel through an action in a court of equity. In such a case a return or an offer to return everything of value received under the policy must be made at or before the commencement of the action. . . . In this case the defendant is not seeking any affirmative relief. It seeks to establish that there never existed a policy of insurance in favor of the deceased in defendant's company, by reason of the fact that it was delivered under circumstances that by its own terms provided that it should not come into effect." In Taylor's case, hereinbefore referred to, it was said: "The claim that a party who has by false or fraudulent representations secured membership in an order of this character has an absolute right to the return of the money which he paid into its treasury, upon the discovery of his fraud, to say the most, rests upon a very meager foundation of merit. Such a rule is an invitation to fraud. If the money thus voluntarily paid can be recovered or must be returned by the insurer as a condition precedent to pleading the fraud as a defense, a party who contemplates obtaining insurance by false representations may well feel that he is taking no chances of loss, but is entering upon a transaction in which he stands to gain large returns without any possibility of endangering his investment. If the fraud is never discovered, the beneficiary under the policy which will be issued to him will receive the full benefit of the contract. If it by chance is discovered, his estate will receive back all that has been paid by the guilty party, and the trouble and expense attending upon the transaction will be thrown upon the innocent party. As the beneficiary certificate upon which this action is

brought was obtained by fraud, the lodge was not required to return what it had received for assessments, as a condition of availing itself of the right to elect to treat the contract as void ab initio. The widow of the party who had obtained membership by fraudulent representations had no just claim to the money, and certainly it was not due to the party named as beneficiary in the certificate;" citing Thompson *v.* Travelers' Ins. Co., supra. See 15 Notes to Am. Rep. 1041, where a number of cases are collated on page 1042, wherein is cited Blaeser *v.* Milwaukee Mech. Mut. Ins. Co., supra, from which we have quoted. Of course we do not mean to hold that an insurance company might not be estopped from setting up fraud practiced upon it in the procurement of the policy, if it should appear that after the discovery of such fraud the company did not promptly move to have the contract of insurance rescinded, but treated it as valid and binding and continued to receive the premiums thereon.                              *All the Justices concur.*