74555. BOWEN & BOWEN, INC. v. McCOY-GIBBONS, INC.
(363 SE2d 827)

BEASLEY, Judge.

Plaintiff Bowen & Bowen, Inc., ("Bowen") a house contractor, appeals the grant of summary judgment to McCoy-Gibbons, Inc., which firm tests soils and construction materials, and the denial of plaintiff's motion to add McCoy individually as a defendant in this suit arising from soil testing on a residential site.

At the oral request of the contractor, the soils engineer made soil borings on January 16, 1981, to determine the consistency of the in-place fill soils within the proposed building area on a lot on which the contractor wanted to construct a house. The soils engineer issued a report to the contractor on the same date, stating that the fill soils penetrated by the borings indicated very loose material to a depth of approximately four feet and that these soils were not adequately compacted for the support of the proposed foundation. The report suggested ways to remedy the situation, namely, that the loose soils within the proposed building area be removed to the depth of firm bearing soils and replaced with suitable well-compacted fill soil placed

in thin layers, that a degree of compaction corresponding to at least ninety-five percent of the "standard Proctor maximum dry density" be attained, that an "[i]n place density test" be performed to insure that the specified degree of compaction was achieved, and that "a maximum of 2000 P.S.F. be used in the foundation design."

The soils engineer returned to the site on May 14 at the oral request of the contractor to perform further tests on the soil. It was his opinion that the tested soils in the general fill area then met the minimum of ninety-five percent compaction.

Thereafter, the contractor built the house, substantially completing it in September 1981 and selling it on October 12. The contractor claimed that prior to closing large cracks began to develop in the exterior brick veneer and in the poured concrete foundation walls in the basement, that it repaired the cracks in the veneer on at least two occasions but each time the cracks widened and reappeared, and that in April 1982, it contacted the soils engineer and requested him to come to the site and view the problems, which he did. His opinion was that the problem had been caused at least in part by the failure of certain retaining walls due to hydrostatic pressure and their inadequate design. He supported this by pointing out that the walls had fallen after prolonged and heavy rains in late January and early February of 1982 and were reconstructed by the contractor. The firm submitted a report for a proposal which itemized the work deemed necessary to stabilize the foundation and the projected costs.

The contractor filed a three-count suit against the soils engineering firm in October 1985, alleging that it breached express warranties created by representations made in its May 14, 1981, report with respect to acceptable percentage of compaction of the soils at the site and in failing to conduct the soil testing and analysis in conformity with acceptable standards of the soils engineering profession generally; that it was negligent and failed to exercise that degree of care, skill, and diligence exercised by the engineering profession generally under similar conditions and like surrounding circumstances and in failing to conduct the engineering tests according to the acceptable standard prevailing in the engineering profession; and that it was negligent in failing to perform the engineering test and report in a workmanlike manner, all of which negligence was the proximate cause of the suffered damages, both direct and consequential.

Another count was added to the complaint in March 1986, alleging that McCoy had fraudulently represented himself as a licensed soils engineer and led the contractor to believe that he was qualified to conduct the necessary soils test and that McCoy warranted that the test would comply with the minimum accepted standards in the soils engineering profession. Plaintiff contractor claimed that on February 14, 1986, it learned for the first time that McCoy "is not a soils

engineer and furthermore that he holds no engineering degrees whatsoever," and that because it relied to its detriment on wilful misrepresentations that McCoy was a competent soils engineer, it was required to retain the services of another soils engineering firm to analyze and correct the problem at a cost of over $22,000.

In September plaintiff contractor moved to add McCoy individually as a co-defendant based upon the alleged fraud, asking that the corporate defendant be disregarded as a "mere alter ego or business conduit" of McCoy.

The defendant soils engineering firm moved for summary judgment on the whole claim, which was denied. It thereafter made a second motion for summary judgment, on the ground that the complaint was barred by the four-year statute of limitation in OCGA § 9-3-25 and was not tolled. This motion was granted, and the contractor's motion to add McCoy was denied.

1. The first enumeration of error is that the court failed to find that "the" right of action accrued on April 12, 1982, within four years of the filing of the action under OCGA § 9-3-30. April 12, 1982, is the date of a letter by another soils engineering firm which letter plaintiff claims "pointed out that the report submitted by McCoy-Gibbons dated May 4, 1981, showed on its face that the standard procedure existing in the soils engineering profession was not followed," and that this letter marked its first discovery that the damage was causally connected to the failure of McCoy-Gibbons to properly conduct its soils engineering and testing.

a). As to the right to bring the contract claim when it did, appellee soils engineering firm and the trial court are correct. The contractor alleged that the firm breached express warranties created by representations made in its second report and in failing to perform within acceptable professional standards. There was no written contract. The limitation for bringing an action for breach of an oral contract is four years after the right of action accrues. OCGA § 9-3-25. It accrues on the date or dates of any breaches of duty imposed by the oral contracts of employment. See, e.g., *McClain v. Johnson*, 160 Ga. App. 548 (288 SE2d 9) (1981), which addresses the question in the context of breach of duty imposed by the attorney-client contract of employment.

The contract dates here were January 16 and May 14, 1981, which were also the dates of performance. Therefore the contractor's cause of action for breach of any warranties had expired by the time it filed suit on October 28, 1985.

The contractor's argument that the running of the statute of limitation was tolled under OCGA § 9-3-96 by the alleged fraud of the soils engineering firm fails. The reason is that "[t]he fraud required to toll the statute of limitation under this code section must be of that

character which involves moral turpitude, that is, actual fraud rather than constructive fraud, in the absence of a confidential relationship, and in addition, such actual fraud must have the effect of debarring and deterring the plaintiff from his action. [Cits.]" *Curlee v. Mock Enterprises*, 173 Ga. App. 594, 597 (2) (327 SE2d 736) (1985).

Even assuming the alleged misrepresentation of McCoy's credentials, i.e., that he is not licensed and has no engineering degree, those facts were ascertainable before, at, and after the firm was engaged and thus did not waylay a timely suit. The affidavit of the executive director of the State Board of Registration for Professional Engineers and Land Surveyors stated that the board maintains records for all professional engineers and land surveyors licensed to practice within Georgia, that the office routinely receives requests from the public for information as to whether specific individuals are registered with the board as professional engineers or land surveyors, and that the office responds to the requests and provides the requested information on inquiry from the public whether the inquiries are by telephone, in writing, or in person. There is no evidence that the contractor at any time prior to the taking of McCoy's deposition on February 14, 1986, made any attempt to inquire whether or not McCoy held certain degrees or was licensed as a soils engineer.

b). Counts two, three and four of the suit sound in tort seeking damages for the negligent testing and for McCoy's fraudulent actions allegedly leading to the damage to the real property. The proper statute of limitation to be applied to these causes of action is OCGA § 9-3-30, not OCGA § 9-3-25. It provides that " 'All actions for . . . damage to realty shall be brought within four years after *the right of action accrues.*' (Emphasis supplied.)" *Lumbermen's Mut. Cas. Co. v. Pattillo Constr. Co.*, 254 Ga. 461, 462 (330 SE2d 344) (1985). The soils engineering firm argues that OCGA § 9-3-30 is inapplicable to this situation in that it pertains only to "trespass upon or damage to realty," and that the firm did not trespass on the property because it entered with approval to conduct the tests, and that the tests conducted did not occasion property damage. The defendant firm contends there could be no property damage because the property was not occupied at the time of the inspections and reports, and that where a test report on the condition of real property turns out to be erroneous, the damage is in the nature of an economic loss, rather than physical harm or property damage.

Contrary to the soils engineering firm's assertion, the tort claims are of the type governed by OCGA § 9-3-30. See *Williams v. Thompson*, 223 Tenn. 170 (443 SW2d 447) (1969); *Oakes v. McCarthy Co.*, 267 Cal. App. 2d 231 (73 Cal. Rptr. 127) (1968). Though the acts complained of here, i.e., the soil testing, did not of themselves immediately produce the resultant problems with the structure which was

part of the realty, the gravamen of the contractor's complaints is that the firm's actions led to the damage to the real estate because the construction of the structure was based on the soil testing and recommendations. OCGA § 9-3-30 has been applied in situations where the alleged wrongs are the proximate but not the immediate cause of the resulting damage. See *Kemp v. Bell-View, Inc.*, 179 Ga. App. 577 (346 SE2d 923) (1986).

The firm further contends that OCGA § 9-3-30 is inapplicable to the present suit because the action involves *only* alleged breaches of oral contracts for soil testing, that the complained of actions do not give rise to claims sounding in tort as well. It maintains that "where only [soil] testing and not construction is involved, a breach of contract does not give rise to a tort."

" ' "[A] single act or course of conduct may constitute either a breach of contract or an independent tort. If such act or conduct violates a contract obligation, suit may be brought on the breach. If the act or conduct violates a duty owed to plaintiff, independent of contract, to avoid harming him, suit may be brought on the tort. [Cits.]" [Cit.]' " *Coursey Bldg. Assoc. v. Baker*, 165 Ga. App. 521, 524 (5) (301 SE2d 688) (1983). Here, there was a duty imposed by law, to perform the soil testing in a skillful, careful, diligent and workmanlike manner, contemplated by the parties. See *Sam Finley, Inc. v. Barnes*, 156 Ga. App. 802 (1) (275 SE2d 380) (1980) and *Coursey Bldg. Assoc. v. Baker*, supra. The breach of such duty allows a claim of negligence.

Having determined that OCGA § 9-3-30 applies, the next question is whether or not it renders the contractor's tort claims untimely.

Under OCGA § 9-3-30, a tort cause of action accrues, and therefore the statute begins to run, when the injured party becomes aware of or in the exercise of reasonable diligence should have become aware of his injury or damage and the causal connection between the injury and the alleged tortious conduct of the defendant. *Lumbermen's Mut. Cas. Co.*, supra.

The contractor maintains that it first became aware of the causal connection between the damage to the residence and any action on the part of the soil testing firm at the time of the letter from the later-retained soils engineering firm. The letter stated in relevant part: "We have reviewed the results of compaction and bearing capacity tests performed in January and May of 1981 by McCoy-Gibbons, Inc. The compaction tests were performed at one foot below 'FSG,' assumed to be finished subgrade elevation. These results do not reflect the soil compaction throughout the entire fill depth. The standard procedure is to check the field density every two feet as the fill is placed in thin lifts. . . ."

Defendant firm did not show by undisputed evidence on summary judgment that the contractor was aware, or by the exercise of

ordinary diligence should have been aware, at the time of damage to the structure or prior to the time of the subject letter, of defendant's alleged negligence and the damage to the realty resulting therefrom.

Count 4 of the suit, claiming fraud as allegedly leading to the damage to the real property, fails as did the contractor's assertion of fraud as tolling the statute of limitation under OCGA § 9-3-96.

Under the unrebutted evidence submitted by the defendant firm, we conclude as a matter of law that the contractor in the exercise of reasonable diligence should have and could have become aware of the alleged fraud or misrepresentation in McCoy's credentials prior to the time of contracting and performance and most certainly by the time of structural problems. See subdivision (a), supra; *Lorick v. Na-Churs Plant Food Co.*, 150 Ga. App. 209, 210 (2) (257 SE2d 332) (1979). Thus the contractor's claim of fraud was not timely under the provisions of OCGA § 9-3-30.

2. The trial court did not err in refusing to add McCoy individually as a party defendant. The attempted causes of action as to fraud and breach of contract were no longer maintainable. As to the negligence counts, the new assertion that McCoy-Gibbons was merely the alter ego of McCoy does not justify his addition.

To begin with, " '[t]he concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party "has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." [Cits.]' " *Jenkins v. Judith Sans Intl.*, 175 Ga. App. 171 (1) (332 SE2d 687) (1985). "The question of whether the corporate entity should be disregarded depends upon the particular circumstances of each case. [Cit.]" *Hogan v. Mayor &c. of Savannah*, 171 Ga. App. 671, 673 (3) (320 SE2d 555) (1984). "Great caution should be exercised by the court in disregarding the corporate entity. . . ." *Farmers Warehouse of Pelham v. Collins*, 220 Ga. 141, 150 (2) (137 SE2d 619) (1964); see also *Florida Shade &c. Growers v. Duncan*, 150 Ga. App. 34 (256 SE2d 644) (1979).

The plaintiff made no showing that McCoy was in any manner the alter ego of the corporation. See *Harrell v. Bank South*, 174 Ga. App. 384 (330 SE2d 147) (1985) which discusses the alter ego theory. The court did not abuse its discretion. *Cartin v. Boles*, 155 Ga. App. 248, 254 (5) (270 SE2d 799) (1980).

To recapitulate, the defendant soils engineering firm was entitled to summary judgment on the contract and fraud claims but the court erred in granting it on the negligence claims; the court did not err in refusing to add McCoy individually as a defendant.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Sognier, J., concur.*

DECIDED DECEMBER 2, 1987 —
REHEARING DENIED DECEMBER 15, 1987.

*Robert D. Cheeley, Joseph E. Cheeley III*, for appellant.
*A. Joseph Nardone, Jr.*, for appellee.