## 76157. McCLINTOCK v. WELLINGTON TRADE, INC.
### (371 SE2d 893)

BEASLEY, Judge.

McClintock purchased from Containerhouse one hundred used ocean freight containers to be resold and utilized as mini-warehouses. The purchase was made on credit and effected by a Purchase and Security Agreement, drafted by McClintock's counsel working on the instructions of both parties. It provided for payment by three differing promissory notes, one dubbed short term and two dubbed long term. Each was secured by a set number of the containers, with differing specifications among the three groups.

Although title to all one hundred containers was delivered immediately, only sixteen of the first group of containers were physically delivered, as McClintock directed. McClintock failed to pay according to the terms of the notes and Containerhouse deemed McClintock to be in default of all three notes and made a written demand. McClintock's attorney wrote Containerhouse's attorney advising that McClintock did not consider himself to be in default due to the quality of the containers but that he elected to proceed with the appraisal method pursuant to paragraph 4.7 of the agreement.

Approximately one month later, McClintock's counsel again wrote Containerhouse's counsel with regard to the appraisal. The letter stated that it was McClintock's contention that the agreement became effective only with respect to sixteen containers which had been physically delivered and which were secured by the short term note; therefore, that McClintock would have those sixteen containers appraised and would apply the provisions of paragraph 4.7 on a pro rata basis, at the original agreed upon price of $2,600 per container. (The other two groups of containers bore a different price.) Two days later, Containerhouse's attorney replied that in addition to the sixteen containers which were actually delivered, there were six additional containers set aside for delivery but that McClintock never gave directions as to where he wanted to place them. (This letter erroneously referred to six containers rather than five to complete the number of twenty-one containers secured by the short term note.) It was Containerhouse's position that these containers should also be appraised and that there was a binding contract for McClintock to purchase all

the containers referred to in the agreement.

McClintock had the sixteen containers appraised. Containerhouse had all of the containers appraised and determined that there was a deficiency. Containerhouse recovered the containers which had actually been delivered. Some of these and of the remainder of the one hundred were resold, and some were retained. Notice of the sale was not given to McClintock.

Containerhouse sued McClintock in three counts, one on each note, for the differences between the outstanding balances on the notes and the appraised values, a total of $107,100 plus pre-judgment interest at the contract rates (computed up to the time of filing as approximately $24,000) and statutory attorney fees. McClintock counterclaimed alleging that Containerhouse breached the agreement in that the initial sixteen units were of poor quality and non-conforming and that the company had defrauded him by inducing him to enter into the agreement knowing it would not perform, and by delivering units of inferior quality and of substantially lesser value than that contracted for. He also claimed that he was entitled to notice of the sale and since he did not get notice, no action for a deficiency was allowed.

A jury awarded Containerhouse $135,997.50 plus $2,160 sales tax and attorney fees and expenses of $14,020; the jury also found for plaintiff Containerhouse on the counterclaim.

1. Appellant contends that the trial court erred in ruling as a matter of law that he exercised his right to proceed under paragraph 4.7 of the Purchase and Security Agreement as to all one hundred containers, rather than only the sixteen containers which had been physically delivered.

He argues that in so ruling the trial court was "granting a partial summary judgment during the course of the trial" despite clear evidence that the appraisal election applied at most to the twenty-one containers which secured the short term note, that at the very least there was a factual question, including an estoppel issue, with regard to the scope of the appraisal request. Containerhouse responds that the court's ruling was a proper construction of the contract.

It becomes necessary to examine the relevant provisions of the parties' agreement. Paragraph 4.6 provided: "If an Event of Default . . . occurs with respect to the Short Term Note and is continuing, Containerhouse, at its option, and upon 30 days' notice to McClintock, will, subject to McClintock's rights under Paragraph 4.7 have the right to take possession of the Containers securing the Short Term Note and may sell the Containers or any part or parts thereof at public or private sale and may apply the net proceeds, after deducting all costs and expenses for collection, sale and delivery, to the payment of the Short Term Note. If an Event of Default . . . occurs

with respect to either of the Long Term Notes and is continuing, Containerhouse shall, upon 30 days' written notice to McClintock, take possession of the Containers securing the Long Term Note(s) in default and shall sell such Containers or any part or parts thereof at public or private sale and shall apply the net proceeds, after deducting all costs and expenses of collection, sale and delivery to the defaulted Long Term Note(s). At a public sale, Containerhouse may purchase all or any part of the Containers offered at such sale. In addition, Containerhouse will have all of the rights and remedies of a secured party under the applicable Uniform Commercial Code or otherwise as provided by law. McClintock will have the obligation promptly to assemble the Containers and make available to Containerhouse or its assignee at a place and time convenient to both parties. In addition to the 30-day notice of default, Containerhouse will give notice to McClintock of any sale or other disposition of the Containers and the mailing of such notice to McClintock at his address last known to Containerhouse, at least ten days before any sale or other disposition, conclusively will be deemed reasonable notice thereof."

Paragraph 4.7 provided: "(a) Notwithstanding anything to the contrary in the Agreement, in order to avoid loss to McClintock which may be occasioned by a distress sale of the Containers, Containerhouse or its assignee hereby agrees, if McClintock makes the election referred to in paragraph 4.7 (b), to accept title to the Containers with regard to the Short Term Note, and in any event with respect to the Long Term Note(s), at the lesser of (i) the appraised fair market value of the Containers at the time of foreclosure ('Appraised Value,' as further defined hereinafter), or (ii) the amount then outstanding on the Long Term Note(s).

"(b) If McClintock receives from Containerhouse the notice of default referred to in Paragraph 4.6, McClintock may notify Containerhouse, within 30 days of the date of such notice, of its election to proceed in accordance with this Paragraph 4.7. If McClintock so elects, McClintock and Containerhouse will each retain, within 20 days of Containerhouse's receipt of notice of such election, an independent qualified appraiser . . . to appraise as promptly as is practicable, but in any event within 30 days from the date of his appointment, the fair market value of the Containers based on their quality and quantity and the anticipated costs and proceeds of its disposition at the wholesale level on a commercially reasonable basis in accordance with practices then prevailing in the industry . . . The Appraised Value will be the average of the values determined by these two appraisals; . . . The determination of the Appraised Value by the appraisers or pursuant to appraiser arbitration, as the case may be, will be binding on the parties and enforceable in any court having

jurisdiction thereof.

"(c) After the Appraised Value is determined McClintock will have the obligation to assemble the Containers and make them available to Containerhouse or its assignee at a place and time convenient to both parties. Thereafter, Containerhouse or its assignee will have all right, title and interest in the Containers."

Paragraph 4.9 provided: "Nothing contained in this Paragraph 4 will obligate McClintock further than to bind the right, title and interest of Containerhouse in and to the Containers, and on default hereunder McClintock will be personally liable for, and only for, the amount due with respect to the Short Term Note, and that portion of Long Term Notes after application of any proceeds from the disposition, or other application of the value, of the Containers, as herein provided."

The ruling at issue came about following plaintiff's objection to defendant's direct examination of the attorney who drafted the purchase agreement. Defendant asked the attorney if when the attorney drafted the agreement, it was the attorney's understanding that the intention of the parties under paragraph 4.7 was that if there was an election by McClintock to proceed under that paragraph that McClintock would waive his rights to receive credit for monies that Containerhouse generated by selling the containers. Plaintiff objected on the basis that the question violated the parol evidence rule, because it was an attempt to use testimony to "construe and change the terms of an unambiguous contract," that the "contracts spoke for themselves." The jury was removed and the parties argued at length as to whether or not the contract terms were ambiguous so as to permit the defendant to continue the objected-to line of questioning. The court then attempted to narrow or crystallize the issues that the jury would have to determine.

Plaintiff's position was that there were no issues for the jury other than to calculate the damages according to the notes, that once McClintock elected the appraisal method under paragraph 4.7, it covered all one hundred containers and he waived notice of any sale of the collateral. Defendant responded that the contract did not contain waiver language and that none was implied, that it did expressly provide for notice, and that in any event he had elected to have only part of the collateral appraised.

The court ruled that McClintock had made an election to have all the containers appraised. The direct examination of defendant's witness resumed thereafter.

The court later charged the jury that "under the contract of the parties, once the defendant made an election to proceed under paragraph 4.7, from the point of election the parties were bound to follow the appraisal procedure set forth in paragraph 4.7. After the election

was made the plaintiff had no obligation to notify the defendant of any further sales or to give him credit for any later sales."

It is clear that the court construed the parties' agreement with respect to whether the contract allowed partial or only total appraisal choice. It is not clear whether the court construed it as allowing only all or nothing so that the choosing of appraisal method constituted a *total* election as a matter of law, (which is appellee Containerhouse's understanding of the court's ruling), or whether the court construed the agreement as allowing a choice between some or all and that evidence of the choice made here undisputedly amounted to a total election as a matter of fact (which is appellant's understanding of the court's ruling). Regardless of which interpretation of the court's analysis is accurate, the jury was told that McClintock's election was as to all the containers. In either event the threshold and dispositive question is not whether the disputed ruling was one of fact or one of law but whether the parties' contract on this point was susceptible to construction by the court.

"Ordinarily, . . . , '[t]he construction of a contract is a question of law for the court,' OCGA § 13-2-1, the cardinal principle of construction being the ascertainment of the parties' intention. OCGA § 13-2-3. Where there appears to be an ambiguity in the contract, however, a jury question may arise, since resolution of the apparent ambiguity may require a consideration of evidence (including parol evidence) regarding the facts which reflect the intention of the parties in entering into the contract. [Cits.] Questions of fact, of course, are the province of the jury. [Cit.]

"The existence or non-existence of an ambiguity is itself a question of law for the court. [Cit.] If the court determines that there is an ambiguity, this does not automatically give rise to a jury question, however. [Cit.] At this point it becomes the duty of the court to attempt to resolve the ambiguity by applying the rules of construction set forth in OCGA § 13-2-2. [Cits.] It is only when the ambiguity remains after the statutory rules have been applied that the issue becomes one for the jury. [Cits.]" *Capital Ford Truck Sales v. U. S. Fire Ins. Co.*, 180 Ga. App. 413, 417 (1) (349 SE2d 201) (1986), rev'd and vacated on other grounds, 257 Ga. 77 (355 SE2d 428) (1987), 183 Ga. App. 242 (360 SE2d 78) (1987).

Looking at the entire contract, the provisions relating to the appraisal election and to what it applies and when are ambiguous, there being more than one way in which these provisions might be reasonably construed. Applying the applicable rules of construction, OCGA §§ 13-2-2 (1), (4), (5) and 13-2-3, the provisions are still ambiguous and, the intention of the parties being factually in dispute, appellant was entitled to a jury resolution of the issue. See *Travelers Ins. Co. v. Blakey*, 255 Ga. 699 (342 SE2d 308) (1986), *Travelers Ins. Co. v.*

*Blakey*, 180 Ga. App. 520 (349 SE2d 474) (1986).

Inasmuch as the jury was improperly precluded from construing the unresolved ambiguous contract and inasmuch as the jury's verdict was premised on the court's inappropriate determination, the judgment on the main claim cannot stand.

2. Appellant contends that the trial court erred in excluding from evidence a letter from Containerhouse's owner to McClintock's then-counsel and testimony regarding the letter in that the evidence was relevant to the question of whether McClintock's request to proceed under paragraph 4.7 applied to all one hundred containers rather than only sixteen.

The trial court did not err in excluding the letter and testimony about its contents because the letter evidenced an attempt to compromise the dispute. OCGA § 24-3-37; *Allen v. Brackett*, 165 Ga. App. 415 (1) (301 SE2d 486) (1983).

3. Appellant contends that the court erred in ruling that his request to proceed under paragraph 4.7 constituted a waiver of his right to notice of the sale or disposition of the collateral.

The court's ruling that McClintock waived notice of disposition or sale of the collateral is affected by the court's unauthorized determination and jury charge that McClintock elected the appraisal method for all the collateral. The notice provision also suffers from ambiguity not resolvable by court application of the rules of construction and therefore should have been left for interpretation by the jury. See Division 1.

Appellant has failed to provide any authority for the claim that OCGA § 11-9-504 (3) required that he be provided with reasonable notice of the time and place of the sale of the collateral regardless of the contract language. As appellee observes, the Uniform Commercial Code authorizes parties to vary its provisions and allows for the discharge of claims or rights arising out of an alleged breach by written waiver or renunciation. OCGA §§ 11-1-102 (3); 11-1-107. Furthermore, OCGA § 11-9-505 (2) allows a debtor to renounce or modify his rights by signing a statement after default. Even if the parties could not by contract waive notice under the Code, the question of whether or not McClintock's actions and writings constituted a renunciation or modification of notice rights under OCGA § 11-9-505 (2) was not ruled on below. See also OCGA § 11-9-501 (3).

4. McClintock also contends that the court erred in excluding his testimony and that of the attorney who drafted the agreement as to whether he intended to waive his right to receive notice of sale or disposition of the collateral when he made his request to proceed under the appraisal option.

Whether or not such parol evidence was properly admissible depended on the court's interpretation of the contract as being ambigu-

ous or not. See OCGA § 24-6-1. The contract was ambiguous, see Division 1, and the sought testimony was relevant not only to determine the parties' intent at the time of election of the appraisal but also to ascertain the intent as to the notice provisions at the time of making the contract.

5. Our decision in Division 1 disposes favorably of appellant's contention that the court erred in charging that once he made an election to proceed under paragraph 4.7, the parties were bound to follow the appraisal method and he had no right to receive notice of disposition of the collateral.

6. In two separate enumerations, appellant asserts that the court erred in refusing to direct a verdict in his favor based upon the lack of any evidence of waiver of notice and of a valid appraisal of the collateral securing the long term notes.

Such contentions are moot. See Division 1.

7. Appellant further contends that the court erred in excluding testimony and limiting the cross-examination of Containerhouse's owner, Sikes, on the question of expenses and overhead costs allegedly resulting from his refusal to pay for the containers in that such expenses and costs had been testified to on direct examination by Sikes as justification for the amount of liquidated damages sought by Containerhouse.

The evidence sought was relevant on the question of the damages claimed by Containerhouse as well as the credibility of Sikes. It was error to preclude it. OCGA § 24-9-64; *Department of Transp. v. 2.734 Acres of Land*, 168 Ga. App. 541, 547 (6) (309 SE2d 816) (1983).

8. Appellant's claim that the verdict was not supported by the evidence and not authorized by the law with regard to the reasonableness of liquidated damages is rendered moot by Division 1.

9. Lastly, appellant claims that the court erred in directing a verdict in favor of Containerhouse on Count II of his counterclaim, which alleged damages for fraud in connection with the sale of the containers.

The only evidence of the claimed fraud was of promises of future performance by Containerhouse. " '[F]raud cannot be predicated upon statements which are promissory in their nature as to future acts. [Cits.]' [Cit.]" *First Nat. Bank &c. Co. in Macon v. Thompson*, 240 Ga. 494, 495 (241 SE2d 253) (1978).

Further, McClintock did not personally inspect the initially delivered containers, which he later claimed were inferior. McClintock had a duty to exercise due diligence to protect his interests, which he did not do. *Lorick v. Na-Churs Plant Food Co.*, 150 Ga. App. 209, 210 (257 SE2d 332) (1979). While questions of due diligence are often for the trier of fact, that is not always the case. One may fail to exercise due diligence as a matter of law, as in this case. See *Bowen & Bowen*

*v. McCoy-Gibbons*, 185 Ga. App. 298, 303 (1) (363 SE2d 827) (1987). " ' "(W)hen the means of knowledge are at hand and equally available to both parties to a contract of sale, if the purchaser does not avail himself of these means, he will not be heard to say, in impeachment of the contract, that he was deceived by the representations of the seller." [Cit.]' [Cit.]" *Lorick*, supra at 210. Thus the fraud claim failed as a matter of law. *Shivers v. Sweda Intl.*, 146 Ga. App. 758, 759 (247 SE2d 576) (1978).

The judgment on the counterclaim stands.

*Judgment affirmed in part and reversed in part. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED JULY 7, 1988 —
REHEARING DENIED JULY 21, 1988 —

*C. David Hailey*, for appellant.
*James W. Penland*, for appellee.