A90A0207, A90A0208. MASSACHUSETTS BAY INSURANCE COMPANY v. HALL et al.; and vice versa.
(395 SE2d 851)

BEASLEY, Judge.

Justin Hall and Ray Hall sued Massachusetts Bay Insurance Company for its refusal to provide coverage upon demand of payment for the loss by fire of their residence, which was insured for $500,000. Insurer contended that it was not obligated to pay under the policy because the cause of the fire was arson, committed by Justin Hall, and also because of claim misrepresentation. Extensive evidence, much of it conflicting, was presented by both sides. The jury verdict was for the Halls for $1,217,049.50 including policy proceeds, bad faith penalty and attorney fees, and prejudgment interest.

Insurer appeals from the denial of its motion for judgment notwithstanding the verdict or for new trial. The Halls cross-appeal from the grant of insurer's motion for partial summary judgment on the issue of fraud.

1. The Halls moved to dismiss the main appeal, asserting that insurer waived its right to appeal because it failed to pay the loss within 60 days after receiving proof of loss and entry of a final judgment, as the policy required. Their argument is that the "final judgment" contemplated by the policy is the judgment entered on the jury verdict, as defined by OCGA § 5-6-34 (a) (1), "where the case is no longer pending in the court below." The rationale is that the term "final judgment" is to be strictly construed against the insurer. They concede that such a final judgment may be appealed and therefore "a judgment cannot be *treated* as final so long as either party has the right to have it reviewed by an appellate court." *Scott v. Liberty Mut. Ins. Co.*, 168 Ga. App. 815, 816 (310 SE2d 772) (1983).

The interpretation urged would deny the insurer its right to an appeal under OCGA § 5-6-33 (a) (1). As further stated in *Scott*, where an appeal is timely filed from the entry of a final judgment in the trial court, "the effect is to suspend the finality of the trial court's judgment. [Cit.] If no timely appeal is filed, however, the original 'final' judgment of the trial court evinces the termination of the proceedings. [Cit.]" Id. at 816. Only if no appeal is taken does the final judgment in the trial court progress " 'from a prima facie termination of the action to an irrebuttable conclusion of finality.' [Cit.]" Id. The motion to dismiss must be denied.

2. At the close of the plaintiffs' evidence the Halls moved for, and the court granted, a directed verdict as to insurer's defense of claim misrepresention, contending that it was waived because insurer did not tender a return of premium when asserting that the policy was void for that reason, but rather sent non-renewal notices and let the policy expire. In later denying insurer's motion for judgment n.o.v. or for new trial, the trial court reaffirmed its directed verdict ruling. It adopted as additional grounds that the evidence showed that insurer had the "necessary information" to assert its defense prior to sending non-renewal notice, and that it failed to make a decision whether to deny Halls' claim prior to the filing of the instant suit and despite the allegations of a void policy in a prior declaratory judgment action insurer filed in federal court.

a) We first deal with the ruling that, by failing to return the premium, the insurer waived the right to refuse coverage as based on certain express policy exclusions.

Insurer's defense included reliance on two provisions of the policy. One states: "We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss . . . (h) Intentional loss, means any loss arising out of any act committed (a) by or at the direction of the insured; and (b) with the intent to cause a loss."

The other states: "Concealment or Fraud. We do not provide for an Insured who has (a) intentionally concealed or misrepresented any material fact or circumstance; or (b) made false statements or engaged in fraudulent conduct; relating to this insurance."

The motion for a directed verdict against defendant insurer's misrepresentation defense was made by plaintiffs after they closed their case-in-chief. This was procedurally incorrect, as such a motion may be made only at the close of the *opponent's* evidence or at the close of the case. OCGA § 9-11-50 (a); *Heard v. Midwest Mut. Ins. Co.,* 167 Ga. App. 44, 45 (3) (306 SE2d 49) (1983). See *Williams v. Buckley,* 148 Ga. App. 778, 779 (3) (252 SE2d 692) (1979). However, defendant responded to the merits of the challenge, the court ruled on the inappropriate motion, and procedural propriety is not raised as an issue on appeal. So we proceed with what occurred.

The sole ground offered by plaintiffs in their demand for a verdict at this stage was that defendant had not tendered the premium back to the insureds. This, insureds contended, waived the defense by virtue of *State Farm Fire &c. Co. v. Jenkins,* 167 Ga. App. 4 (305 SE2d 801) (1983), and *Loeb v. Nationwide Mut. Fire Ins. Co.,* 162 Ga. App. 561 (292 SE2d 409) (1982).

Insurer countered the attack with citation to *Columbian Nat. Life Ins. Co. v. Mulkey,* 146 Ga. 267 (91 SE 106) (1916), for the rule that the premium need not be tendered back in order to rely on the defense that plaintiffs had made material misrepresentations in their claim. It also represented that it had never received the premium in the first place, as the agent had not forwarded and was not authorized to accept it. Insurer also cited *Sales v. State Farm Fire &c. Co.,* 632 FSupp. 435 (N.D. Ga. 1986), rev'd on other grounds, 849 F2d 1383 (11th Cir. 1988), and *Sullivan v. Connecticut Indem. Assn.,* 101 Ga. 809 (29 SE 41) (1897).

In granting insureds' motion, the court eliminated insurer's defense of misrepresentation, which would have avoided the claimed coverage altogether, including coverage of the house as well as the contents. The court immediately instructed the jury that misrepresentation would not preclude coverage and that the only defense left was arson. It also instructed that only evidence of misrepresentation concerning contents would be relevant, because plaintiffs had to prove those losses and their value by a preponderance of evidence but did not have to prove the amount for the house because of Georgia's "valued property act."

Contrary to the court's ruling, the failure to return the premium did not work a waiver of the contractual right to avoid payment of the claim. The premium was earned at the beginning, when the risk attached. *Pinkerton & Laws Co. v. INA,* 121 Ga. App. 26, 27 (172 SE2d 465) (1970); *Nalley v. Hanover Fire Ins. Co.,* 56 Ga. App. 555, 565 (2)

(193 SE 619) (1937).

The policy was not cancelled (the policy specified how each party may cancel), which would have required a refund of any unearned portion of the premium. *Columbian Nat. Life Ins. Co. v. Mulkey,* 146 Ga. 267, supra; *Pinkerton,* supra at 27-28. Nor did the insurer seek to rescind the contract, which would require returning the parties to where they were before the contract was entered into. OCGA § 13-4-60.

Instead, avoiding payment because of misrepresentation depends on the existence of the policy and its provisions, which insured agreed to be bound by. It arises by some action or inaction on the part of the insured in connection with a claim occurring during the policy's life. The improper claim by the insureds does not earn for them a refund of the premium which has been earned by the insurer. The proper fulfillment of a purpose of the contract is frustrated by the claimant's misrepresentation, and such action does not entitle claimant to a return of the consideration paid for the policy. Their right to recover is voided and the insurer's concomitant obligation to pay is avoided by the condition subsequent. 7 Couch on Insurance 2d § 36:49. A rule otherwise would reward the fraud. This would be close to what the Court described in *Columbian,* supra at 271, as "an invitation to fraud." See also *Nalley,* supra at 566.

Obviously, a return of the premium would not be required if the defense was arson and the policy provided "no coverage" in the event of arson. The same must be true when the defense is fraud of a different type, i.e., misrepresentation in the claim. It would be anomalous to say that by keeping the premium for the policy, the insurer was thereby forfeiting or waiving its right to rely on the policy provision which excluded coverage for misrepresentation in claims under the policy. It is the policy itself which is the foundation of the defense, and it must be in force and effect if the defense is to have life. Defendant cited the policy itself, not the common law or OCGA § 33-1-9, as the authority for its defense; the policy was the operative source of the defense.

In other words, the exclusions state in effect that the insurer's agreement to pay does not cover all claims submitted, but only legitimate ones.

The dictum in *Loeb v. Nationwide Fire Ins. Co.,* 162 Ga. App. 561 (292 SE2d 409) (1982), does not control because it related to misrepresentation in a claim made for an event occurring during the policy's life. As to *Sullivan*'s effect on *Loeb* and *Jenkins,* see the view expressed in *Sales,* supra, 849 F2d at 1387. As to *Jenkins,* see also *Sales,* supra, 632 FSupp. at 436. *Haugseth v. Cotton States Mut. Ins. Co.,* 192 Ga. App. 853 (386 SE2d 725) (1989), like *Loeb,* involves misrepresentation in an insurance *application.*

The preclusion of this defense cannot be said to be harmless error. Defendant's evidence of misrepresentations and their significance was curtailed and undermined.

In addition, the jury was not permitted to consider the effect of misrepresentations on coverage vel non. The defendant was deprived of the opportunity to have the jury find that the claim was invalid because of misrepresentation, even though defendant's investigation led it to believe that the claim was not covered under this policy for this reason. Although some evidence of misrepresentations was permitted for the purpose of countering plaintiffs' evidence regarding what contents were lost and what their value was, it was limited to this circumscribed aspect of the case.

b) Next we deal with the ruling that insurer waived the defense of claim misrepresentation by sending the non-renewal notices. The trial court denied the insurer's motion for j.n.o.v., repeating the foregoing ground and adding additional bases for concluding that there had been a forfeiture or waiver of the misrepresentation defense. On appeal the insurer complains that the court erred as to the interrelated grounds of insurer's failing to promptly assert the misrepresentation and deny the claim plus its sending two non-renewal notices. The court considered the latter action of the insurer to be inconsistent with its defense of misrepresentation and to constitute another independent instance of waiver of it.

This was in error because the non-renewal notices sent during the course of the sixty-day investigatory period which is statutorily-allowed, OCGA § 33-4-6, and contractually-provided ("Loss will be payable 60 days after we receive your proof of loss and. . . ."), are not inconsistent with the later-asserted defense of claim misrepresentation. The forms focus on non-renewal of the policy, a future event covering a future time period, and not on the status of the policy in force or the claim filed under it. The reasons for non-renewal given are "underwriting reasons," about which the policyholder is invited to obtain further information by writing to a named representative within ninety days.

These non-renewal notices were clearly signals of the adverse relationship of the parties to the contract and precursors to the denial of the claims the next month, after the investigation was completed. They indicated to the insureds that the insurer believed that something was amiss. No recitation was made in the notices with respect to satisfaction of the pending fire loss claim. No inference of acceptance of that claim appears.

Moreover, the insurer was fulfilling its responsibility to advise its insureds in advance that they would not cover their property, so that the insureds would have adequate time and opportunity to secure other coverage. OCGA § 33-24-46 (d). The Code section, which re-

quires the notices to be given at least 30 days in advance of the expiration/non-renewal date, is specifically pointed to in the notices. Since the policy anniversary date was January 28, 1987, the insurer had no choice but to send the notices in December. In so doing it did not forfeit its right to contest the claim for an event that had already occurred. It was happenstance that the notices had to be sent, by law, while the investigation of the claim was still in progress, a congruence caused in part by plaintiffs' not getting the claim to the insurer in proper form until November 3. Insurer had until early January to complete it, according to the Loss Payment provision of the policy.

The trial court's finding, as a matter of law, that insurer had the "necessary information" at the end of November 1986 to assert that it would not pay due to misrepresentation was the premise for concluding that the non-renewal notices were "inconsistent." But such a finding is not compelled. The caution which was exhibited by the insurer in taking numerous steps in its investigation from November to January before it moved from suspicion to certainty, as far as it was concerned, should not be faulted.

As stated by Judge Alaimo in *Carver v. Allstate Ins. Co.,* 94 FRD 131, 134 (S.D. Ga. 1982): "In the early stages of claims investigation, management is primarily concerned . . . with 'deciding whether to resist the claim, to reimburse the insured and seek subrogation of the insured's claim against the third party, or to reimburse the insured and forget about the claim thereafter.' [Cit.] At some point, however, an insurance company's activity shifts from mere claims evaluation to a strong anticipation of litigation." The court recognized: "[C]laims for fire loss, unlike other types of property loss, can more easily be cloaked in fraudulent or criminal conduct, and engender more wariness from insurance companies at the time of filing." Id. at 135. Exhibited in this case is that wariness turned to suspicion which, with the deposition of Justin Hall on January 8, turned to conviction.

We hold infra that, as a matter of law, the arson defense was "not frivolous or unfounded." The trial court's ruling would have required the insurer to deny coverage based on misrepresentation in November, when its investigation into both arson and misrepresentation was incomplete. Such would engender premature denials, to the detriment of insureds.

This case differs significantly from *State Farm Fire &c. Co v. Jenkins,* supra. In it, the insurer's messages to the insured were that the policy would continue in force if the premiums were paid. It was the "demand for payment in full for premiums due" which acted as a waiver. Id. at 7. Here the notices advise of a discontinuation of the contractual relationship as it relates to that period of time when a renewal would ordinarily be effected. This is the opposite of notification that the contractual relationship would continue if the new con-

sideration, for the new calendar period, were paid. In *Jenkins*, the uninterrupted course of travel was being offered, whereas in Halls' case, an impossible roadblock was being announced.

The insurer did, within days of its completion of the investigation, act to avoid liability for coverage. It sought a judicial declaration that the policy became void, according to its terms, due to the happening of a condition subsequent to its inception, i.e., the filing of an allegedly invalid claim.

3. Insurer validly contends that the trial court erred in refusing to grant its motion for judgment n.o.v. or for new trial, and in failing to rule that its defense was not frivolous or unfounded so that the jury's consideration of the issue of bad faith was improper as a matter of law.

"To support a cause of action under OCGA § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith. [Cits.] 'A defen[s]e going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the company as effectually as would a complete defense to the action.' [Cits.] 'Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact.' [Cit.]" *Central Nat. Ins. Co. of Omaha v. Dixon*, 188 Ga. App. 680, 683 (5) (373 SE2d 849) (1988).

*Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga. App. 155, 156 (1) (308 SE2d 382) (1983) is controlling. Here, as in *Fortson*, the insurer asserted an arson defense and presented expert testimony that the fire was of incendiary origin. In the opinion of insurer's experts, the fire had been intentionally set as shown by a liquid burn pattern and traces of kerosene and gasoline in the debris and unburned kerosene and gasoline soaked papers in other unburned areas. Insurer also tendered evidence to show motive and opportunity in that the Halls were experiencing financial difficulties at the time and Justin Hall was the last person to leave the house shortly before the fire was discovered around midnight. The Halls offered evidence that the fire originated from an electrical malfunction, that there was no burn pattern and that they were not in poor financial condition.

"Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact. [Cit.] Where the question of liability is close and the facts are disputed so that the insurer has reasonable grounds to contest the claim, no penalty should be permitted. [Cit.] 'The test of bad faith within the meaning of the law in such cases is as of the time of trial, in the final analysis, and not at the time of refusal to pay upon demand. Whatever the facts are at the time of such refusal to pay if at the trial there was a reasonable

ground for the insurer to contest the claim there can be no finding against the insurance company for bad faith and attorney's fees regardless of the outcome of the case.' [Cit.] In determining whether the evidence is sufficient to support the verdict, '(t)he proper rule is that the judgment should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer.' [Cit.]" *Fortson*, supra at 158. Accord *Vulcan Life Ins. Co. v. Davenport*, 191 Ga. App. 79 (8) (380 SE2d 751) (1989).

4. Before trial the insurer filed a motion in limine seeking to exclude evidence of the fact that no criminal arson charges had been brought against the Halls in connection with the fire. The court ruled that such evidence would be excluded unless insurer itself presented evidence of criminal matters.

" 'The policy of Georgia . . . is to admit evidence, even if its admissibility is doubtful, because it is more dangerous to suppress the truth than to allow a loophole. . . .' [Cit.] If evidence is relevant, has probative value, and is not inadmissible for some reason of prejudice or illegality, it should be admitted." *Whidby v. Columbine Carrier*, 182 Ga. App. 638, 645 (6) (356 SE2d 709) (1987). This evidence may have been relevant to the issue of bad faith, but we have reversed the award of bad faith damages, so under the circumstances it was not prejudicial.

5. In the cross-appeal the Halls enumerate as error the trial court's grant of partial summary judgment to insurer in finding as a matter of law that the Halls did not prove the requisite five elements of fraud in connection with their claim for damages arising from insurer's alleged fraudulent misrepresentations. The Halls maintained that it intentionally misled them as to the cause of the fire by statements and actions in order to make them believe that the insurance company thought the fire was of accidental origin and the only question being investigated was the amount of contents lost in the fire; and that they were not informed of insurer's true belief that the fire was of incendiary origin until some four months after the house burned, at which time any investigation they might have made in their own behalf was impossible because the debris at the scene had been "shoveled out" by insurer's investigators.

Justin Hall executed a standard non-waiver agreement with insurer immediately following the fire, permitting it to conduct a full investigation into the cause of the fire and the extent of damage and its liability therefor. "An action for misrepresentation requires proof of five elements: ' "(1) (t)hat the defendant made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the plaintiff; (4) that the plaintiff relied on the representations; (5) that the plaintiff sustained

the alleged loss and damage as the proximate result of their having been made." (Cit.)' [Cit.]" *Ekstedt v. Charter Med. Corp.*, 192 Ga. App. 248 (1) (384 SE2d 276) (1989). However, the plaintiff is not "entitled to rely on the alleged misrepresentations without exercising due diligence to ascertain their basis in truth. . . ." Id. at 249. Thus, considering the non-waiver agreement, the trial court found that "[t]he exercise of common prudence and diligence would have mandated [the Halls'] hiring [their] own experts. It is inconceivable that [the Halls], given the agreement between the parties, the size of the loss and the extent of the investigation, could have justifiably relied on any representation of [insurer's adjuster]."

Given the circumstances, the Halls could have hired their own investigator earlier or, at the very least, should have made inquiry of those who had investigated the fire. Such "blind reliance" on the statements and actions, or lack thereof, of insurer's agents "must be considered unjustified as a matter of law. [Cits.] [T]he trial court did not err in entering summary judgment against [the Halls] on the fraud claim." *Bennett v. Clark*, 192 Ga. App. 698, 699 (1) (385 SE2d 780) (1989). *Accord Hill v. Century 21 Max Stancil Realty*, 187 Ga. App. 754 (2) (371 SE2d 217) (1988); *McClintock v. Wellington Trade*, 187 Ga. App. 898, 904 (9) (371 SE2d 893) (1988); *Bowen & Bowen v. McCoy-Gibbons*, 185 Ga. App. 298, 303 (2) (363 SE2d 827) (1987).

A new trial is required.

*Judgment reversed. Carley, C. J., Birdsong, Sognier, Pope and Cooper, JJ., concur. Deen, P. J., McMurray, P. J., and Banke, P. J., concur in part and dissent in part.*

DEEN, Presiding Judge, concurring in part and dissenting in part. I concur in all divisions except 2 and 3.

1. In ruling on Massachusetts Bay's motion for judgment n.o.v. or for new trial, the trial court reaffirmed its ruling granting the Halls' motion for directed verdict on the waiver issue; it also adopted as additional grounds that the evidence showed that Massachusetts Bay had the "necessary information" to assert its defense prior to sending the non-renewal notice, and that it failed to make a decision whether to deny the Halls' claim prior to the filing of the instant suit and despite the allegations of a void policy in a prior declaratory judgment action filed in federal court. Massachusetts Bay argues on appeal that the trial court "has confused the basic difference between the bare receipt of information, and knowledge in the larger context of knowing what it means."

Notwithstanding Massachusetts Bay's protestations that it had not sufficiently "appreciated the facts to conclusively refute the Halls' assertions," this court has held that " ' "[t]he demand for payment in full of a future premium subsequently to the breach of a condition

which would have entitled the insurer to insist upon a forfeiture of the contract will be held to be a waiver of the forfeiture, and be treated as an acknowledgment that the delinquent policy-holder is still entitled to the benefits conferred by his contract." [Cit.]' [Cits.]" *State Farm Fire &c. Co. v. Jenkins*, 167 Ga. App. 4, 6 (1) (305 SE2d 801) (1983). We conclude that the sending of a non-renewal notice is likewise an acknowledgment that the contract remained in effect and entitled the Halls to the benefits conferred thereunder. Massachusetts Bay admitted that when it sent the notice it knew of "some" of the alleged false representations, and that is all that is required. "If a party to a contract seeks to avoid it on the ground of fraud or mistake he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he cannot avoid or rescind such contract." *Gibson v. Alford*, 161 Ga. 672, 673 (5) (132 SE 442) (1925).

Moreover, Massachusetts Bay has failed to show how it was harmed by this ruling since it was allowed to present evidence concerning the alleged false statements to the jury. Out of some 2,000 items claimed in a 70-page Proof of Loss document submitted by Justin Hall, Massachusetts Bay disputed no more than 23 items, and the jury clearly did not believe that the Halls made false statements since it awarded all the plaintiffs requested except for $12,000 out of the $300,000 in available contents coverage. If any error occurred it was harmless, and harmless error does not constitute reversible error. *Goss v. Mathis*, 188 Ga. App. 702 (373 SE2d 807) (1988).

2. Massachusetts Bay also complains that the trial court erred in ruling that its failure to return the Halls' premium effected a waiver of its right to void the policy for fraud and misrepresentation. Not only was the trial court's ruling correct under the holding in *Jenkins* that inconsistent acts result in a waiver of the forfeiture, there is controlling authority that in order to declare a policy void for misrepresentations, the insurer must tender the premium back to the insured. See *Loeb v. Nationwide Mut. Fire Ins. Co.*, 162 Ga. App. 561 (292 SE2d 409) (1982); *Haugseth v. Cotton States Mut. Ins. Co.*, 192 Ga. App. 853 (386 SE2d 725) (1989).

I am authorized to state that Presiding Judge McMurray and Presiding Judge Banke join in this opinion.

DECIDED JUNE 25, 1990 —
REHEARING DENIED JULY 13, 1990 — CERT. APPLIED FOR.

*Drew, Eckl & Farnham, Clayton H. Farnham, Barbara Jo Call*, for appellant.

*Gorby, Reeves, Moraitakis & Whiteman, Nicholas C. Moraitakis,*

*Eve A. Appelbaum, Robert E. Richardson*, for appellees.