GOLDBERG *v.* PROVIDENT WASHINGTON INSURANCE COMPANY.

1. The provisions of the policy of insurance sued upon in this case, relating to appraisement, do not make an appraisement a condition precedent to recovery on the policy, in the absence of demand for appraisement; nor do those provisions make it the duty of the insured to take the initiative in bringing about an appraisement; and the court erred in instructing the jury to the contrary.

2. Overstatements of losses or damages made by the insured in his petition filed in the suit on the policy, or false statements in his testimony given on the trial of the case, would not work a forfeiture of his rights

under the policy, although that instrument contained the provision that "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

3. The definitions of fraud, in the language of sections 4113, 4623, and 4624 of the Civil Code, were not pertinent under the facts of the case.

4. It is not competent for one, though shown to be an expert in bookkeeping, to state that a merchant's books "were not kept in due course of trade or business."

5. Even if it was a valid objection to the testimony of a witness who testified as to the statements of another witness sought to be impeached, that the foundation for the impeachment had not been laid by calling the attention of the witness sought to be impeached to the time, place, and circumstances of making the statements claimed to be false, an objection to the impeaching testimony on the general ground that it was hearsay was not a valid objection.

MARCH 2, 1916.

Action upon insurance policy. Before Judge Ellis. Fulton superior court. December 19, 1914.

Jake Goldberg brought suit against Provident Washington Insurance Company, upon a fire-insurance policy covering a stock of merchandise, alleging a total loss of the stock covered by the policy. Plaintiff introduced in evidence the policy in the standard form, a copy of which, so far as material, was as follows:

"1st. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year; and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from date shall be returned.

"2nd. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

"3rd. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the

building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building. In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon.

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all, or any part, of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice, within thirty days after the receipt of the proof therein required, of its intention so to do; but there can be no abandonment to this company of the property described.

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

"In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and

appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire.

"This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any re- quirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required.

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within 12 months next after the fire."

The jury returned a verdict for the defendant. The plaintiff made a motion for a new trial, which was overruled, and he ex- cepted.

*Colquitt & Conyers* and *R. R. Arnold,* for plaintiff.

*Smith, Hammond & Smith,* for defendant.

BECK, J. (After stating the foregoing facts.)

1. In the motion for a new trial error is assigned upon the fol- lowing charge of the court: "In the absence of an appraisal, or in the absence of an offer by the plaintiff to have one, or a failure on the part of the insurer to appoint an appraiser and go on with the appraisement, or in the absence of notice of the willingness of the plaintiff to have an appraisement, or a failure of the insurance company to agree to it, then, under the terms of the policy as fol- lows: 'No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within 12 months next after the fire,' the plaintiff would not be authorized to bring these suits, and he can not recover in them, unless there were some words used, or acts done on the part of the defendants or their duly authorized agents, which amounted to a waiver of the requirement for appraisal."

Among other grounds, this charge is excepted to because there was no duty on the insured to bring about an appraisement, in the absence of an offer or an effort on the part of the insurer to have an appraisement made. We think this exception is well taken. In this and other portions of the charge the court treated the provisions and stipulations in the policy in regard to an appraisal as being a condition precedent to the right of the plaintiff to recover upon the policy. If it was a condition precedent, of course it was necessary for the plaintiff to take steps to bring about an appraisement, or to offer to have an appraisement made, or to show that there was a failure on the part of the insurer to appoint an appraiser and go on with the appraisement, or that in some other way the insurance company had waived the appraisal provided for in the policy. But we do not think that the provisions in the policy for an appraisal should be treated as a condition precedent to plaintiff's right of recovery. In the case of *Liverpool &c. Insurance Co.* v. *Creighton,* 51 *Ga.* 95, it was said: "An indorsement, amongst others, on a fire-insurance policy, stating that in case of a difference of opinion as to the amount of loss or damage, such difference shall be submitted to arbitration (although such indorsements are referred to in the body of the policy), does not bar the insured of his right of action without such submission, unless the same is stipulated to be a condition precedent to his right to resort to the courts, or as the only mode by which the loss or damage is to be ascertained, or by which the liability of the company can be fixed." This quotation is contained in the first headnote of that case. In the body of the opinion it is said: "Phillips, in his work on Insurance, says, in a note to page 37, 'the provisions for arbitration have little or no practical efficacy in marine insurance in Great Britain or the United States.. The assured may bring a suit for a loss without offering a reference,' and cites, 2 Story's Equity Jurisprudence, sections 1450, 1457; Kidd *vs.* Hollister, 1 Wil. 149; 8 T. R. 139; Robinson *vs.* Georges, 17 Maine, 131 [35 Am. D. 239]. I have examined several of these, and find they support the rule as laid down by Phillips. Baron Alderson said, in a case in 20 Law and Equity, 327, 'the contract might have been framed so as to confine the decision of the committee (the referee) solely to the amount of loss, and that at the trial of an action neither party shall inquire into the amount of loss, and that the

only question shall be the right to recover.' Upon the whole view of the question, both upon principle and authority, we think the rule, as stated from Flanders, is correct, and that such stipulation must clearly show that it is a condition precedent before it can bar the assured of his action." The doctrine there laid down is in harmony with the ruling made by courts of last resort in several other States in construing stipulations in policies as to appraisements and fixing the amount of loss, where the language employed as to appraisal is not substantially different from that contained in the policy in the present case. There may be found opinions lay-. ing down a doctrine not in accord with that just stated; but we think the sounder rule is the one here laid down. See cases collected in the note to German-American Insurance Co. *v.* Jerrils, 28 L. R. A. (N. S.) 104 (82 Kan. 320, 108 Pac. 114), and in the note to Graham *v.* German-American Insurance Co., 15 L. R. A. (N. S.) 1055 (75 O. St. 374, 79 N. E. 930); Winchester *v.* North British &c. Insurance Co., 160 Cal. 1 (116 Pac. 63, 35 L. R. A. (N. S.) 404); Nerger *v.* Equitable Fire Assn., 20 S. D. 419 (107 N. W. 531). The rule laid down in 51 *Ga.* 95, supra, is distinctly recognized and clearly stated in the case of *Adams* v. *Haigler,* 123 *Ga.* 659 (51 S. E. 638). In that case it was said: "It is unquestionably true that parties may stipulate in a contract that the amount of damage in case of a breach shall be fixed by arbitration. But such a stipulation would not bar a party damaged by the breach from recovering the damages by suit, even though there were no arbitration, unless the provision for arbitration amounted to a condition precedent to the right to resort to the courts, or arbitration was made the only mode by which the amount of damages should be ascertained. *Liverpool Ins. Co.* v. *Creighton,* 51 *Ga.* 110. See also Cole Mfg. Co. *v.* Collier, 91 Tenn. 523 [19 S. W. 672, 30 Am. St. R. 898]. The language of paragraph 8 of the contract is, that, if the parties are unable to agree as to the amount due for delay, etc., 'the same *shall* be referred to arbitrators.' The question is whether the mere use of the word *'shall'* makes the submission to arbitration a condition precedent to suit. We do not think so. In the case of Hamilton *v.* Insurance Co., 137 U. S. 370 [11 Sup. Ct. 133, 34 L. ed. 708], a stipulation in an insurance policy, where the word 'shall' was used in the same connection as it was in this contract, was held not to make the stipula-

tion one which would require arbitration as a condition precedent to an action at law. See also, in this connection, Cole Mfg. Co. v. Collier, supra; *Southern Fire Ins. Co.* v. *Knight,* 111 *Ga.* 622 [36 S. E. 821, 52 L. R. A. 70, 78 Am. St. R. 216]. Parties have a right to appeal to the courts for the assessment of damages to which they may be entitled, growing out of a breach of a contract into which they have entered; and while the law authorizes them to make a binding agreement that the damages shall be assessed in other ways and by other tribunals, either provided by law, or created by themselves for this purpose, before any one will be deprived of an appeal to the courts it must appear from clear and unequivocal language in the contract that such was the intention of the parties."

The ruling now made is not in conflict with that in *Southern Mutual Insurance Co.* v. *Turnley,* 100 *Ga.* 296 (27 S. E. 975). The language of the clause as to arbitration in case of disagreement in the policy now under consideration is essentially different from that employed in the policy in the *Turnley* case, where it was held that the appointment of arbitrators was a condition precedent to the right to maintain an action. The provisions of the policy sued on in the *Turnley* case, relating to appraisement, were as follows: "In case of any loss on, or damage to, the property herein described, it shall be optional with the company to rebuild or repair the building or buildings within a reasonable time; . . and if the company shall elect not to repair or replace the building, the damage of the property shall be ascertained by appraisement of the same, by persons mutually chosen for that purpose. It is hereby covenanted and agreed that no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity, until after an award has been obtained in the manner herein provided." A comparison of this language with the provisions as to appraisement in the policy involved in the present case clearly brings out the difference which we have adverted to above.

Other charges of the court, virtually placing upon the plaintiff the duty of taking the initiative and bringing about an appraisement as a condition precedent to his right to maintain a suit upon the policy, were, of course, error under the ruling here made.

2. The policy of insurance contained the following stipulation: "This entire policy shall be void if the insured has concealed or

misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." And the court gave to the jury certain instructions, complained of in the motion for a new trial, which, while in part authorized under the provisions of the policy just quoted and under the evidence in the case, were too broad, in that they in effect instructed the jury, or contained language from which the jury might infer, that a wilful misstatement of fact by the plaintiff on the trial in regard to the value of the property insured, or even a claim in the petition filed in the suit to recover for property known by the plaintiff not to have been damaged or destroyed by the fire, or overvaluations knowingly made by the plaintiff in the trial of the case, for the purpose of collecting more money than he is entitled to, were grounds of forfeiture of the policy. We do not think that the clause of the policy under consideration had ·so broad a scope. It did not make perjury on the part of the plaintiff in giving testimony on the trial a ground of forfeiture; nor do we think that under it a mere overclaim, though knowingly made, in the plaintiff's petition would work a forfeiture. But it related rather to proofs of loss and other statements made under oath by the plaintiff, and other such preliminary matters involving dealings between the insured and the insurer, such as statements or representations made by the former to the latter in regard to the damages or losses claimed to be covered by the policy. It would cover cases of fraudulent misrepresentation of material facts or circumstances, made by the plaintiff to the company or its agents, that might affect the action of the insurer in respect to settling or adjusting the claim of the insured, but would not cover, as said above, an exaggerated claim of loss made in the petition, or perjury committed by the plaintiff during the trial.

3. There was no attempt to show that the plaintiff in the case made misrepresentations as to the value of the stock of goods insured prior to or at the time of the issuance of the policy, and there was no evidence upon that subject; but the charges of fraud relate to false statements in the proofs of loss and in changing and

"padding" the inventory, after the issuance of the policy, of goods claimed to be in the store. We think, therefore, that the court should have omitted from his charge sections 4113, 4623, and 4624 of the Civil Code of 1910.

4. It is not competent for one, though shown to be an expert in bookkeeping, to state his opinion that a merchant's books "were not kept in due course of trade or business."

5. Where a witness's depositions taken by one party are not introduced by the party taking them but introduced by the other party, the former may introduce testimony to contradict and impeach the witness giving the testimony contained in the depositions. And where questions are propounded to the witness introduced for the purpose of impeaching, who contradicts in material particulars the witness attacked, it is not a valid ground of objection to such impeaching testimony that it is hearsay. If the impeaching testimony was objectionable on the ground that the foundation for the same had not been laid by calling the attention of the witness sought to be impeached to the time, place, and circumstances of making the alleged statements, that ground should be specifically assigned.

There was no error in any of the other rulings or charges complained of.    *Judgment reversed. All the Justices concur.*