A93A2008. FIREMAN'S FUND INSURANCE COMPANY
v. DEAN et al.
(441 SE2d 436)

BLACKBURN, Judge.

The plaintiffs/appellees William Dean, Jr., and William deGolian, as co-administrators of the Estate of Thomas Kidwell, Sr. (collectively referred to as the Estate), brought this action to recover proceeds from the decedent's homeowner's insurance policy issued by appellant Fireman's Fund Insurance Company (Fireman's Fund). The jury returned a verdict in favor of the Estate. Fireman's Fund appeals

the trial court's denial of its motions for directed verdict on several issues and asserts that other errors committed by the trial court require a new trial.

On May 7, 1990, Mr. Kidwell was bludgeoned to death with a blunt metallic object, wrapped in a blanket taken from the master bedroom of the insured residence, and stuffed into the trunk of his car.[1] Thereafter, in the early morning hours of May 8, 1990, fire destroyed the insureds' residence. It is undisputed that the fire was intentionally set. It is further undisputed that Mr. and Mrs. Kidwell were separated and that Mr. Kidwell no longer resided in the insured residence. Additionally, Joyce Kidwell (the decedent's wife) arranged to spend the night of the fire with her son and his wife, Jeffrey and Lori Shields.[2] Joyce Kidwell had also arranged for Lori Shields to pick up her dogs from the insured residence. The evidence was disputed as to whether it was unusual for Joyce Kidwell to take her dogs with her for an overnight visit.

On June 7, 1990, Joyce Kidwell gave a recorded statement, to an investigator representing Fireman's Fund, in which she denied any knowledge concerning the fire or her husband's death. On July 18, 1990, Joyce Kidwell filed a sworn statement in proof of loss with Fireman's Fund seeking $330,594 in insurance proceeds. On February 22, 1991, Joyce Kidwell was indicted for the murder of her husband. Thereafter, she refused to submit to the examination under oath requested by Fireman's Fund, asserting her Fifth Amendment right against self-incrimination. On May 15, 1991, Joyce Kidwell was tried and convicted for the murder of Thomas Kidwell. Joyce Kidwell's claim with Fireman's Fund was subsequently dropped.

On March 21, 1991, the Estate filed a proof of loss with Fireman's Fund seeking insurance proceeds in the amount of $383,990. Thereafter, on May 2, 1991, the Estate filed this action. Fireman's Fund answered and asserted several contractual defenses to the Estate's claim.

1. Fireman's Fund asserts that the trial court erred in failing to grant its motion for summary judgment and motion for directed verdict on the issue of whether the entire policy was void because Joyce Kidwell intentionally concealed material facts by refusing to submit to an examination under oath. The Estate responds that Thomas Kidwell was an innocent co-insured and that it should be allowed to recover, despite Joyce Kidwell's actions, pursuant to the Georgia Supreme Court's analysis in *Richards v. Hanover Ins. Co.*, 250 Ga. 613

---

[1] Mr. Kidwell's car was found on May 11, 1990, parked in the Techwood Homes area of Atlanta. Mr. Kidwell's body was found in the trunk of his car.

[2] Joyce Kidwell, Jeffrey Shields, and Lori Shields were later indicted on murder and conspiracy charges.

(299 SE2d 561) (1983).

The *Richards* court interpreted an insurance contract provision which excluded from coverage losses caused by the neglect of "the insured." Although Mr. Richards was arrested for arson in connection with the burning of their house, Mrs. Richards was not implicated in the fire. Both Mr. and Mrs. Richards were listed as "named insured" on the policy. In *Richards*, the Court determined "that whether Mrs. Richards, as an innocent co-insured, [could] recover under her policy depend[ed] on whether the parties to the contract intended the obligations of the co-insureds to be joint or several." 250 Ga. at 615. The Court employed the rules of contract construction and held that by the use of the term "the" in the exclusion, it was unclear whether the policy created joint or several obligations. Id. The Court interpreted the language against the drafter, the insurance company, and determined that Mrs. Richards was not automatically barred from recovery due to Mr. Richards' alleged arson. Id. at 616. *Richards* did not address an OCGA § 33-32-1 (a) issue as hereinafter discussed.

In the present case, the insurance policy listed both Mr. and Mrs. Kidwell as "named insured." Under the conditions of the policy, it provided that "[t]he entire policy will be void if, whether before or after a loss, *an* **insured** has: a. intentionally concealed or misrepresented any material fact or circumstance; b. engaged in fraudulent conduct; or c. made false statements; relating to this insurance." (Emphasis supplied.) This language is not ambiguous. To the contrary, it is clear that the policy is voided if "an insured" conceals material facts. In *Sales v. State Farm Fire &c. Co.*, 849 F2d 1383 (11th Cir. 1988), the court, interpreting Georgia law, determined that an insurance policy provision voiding the policy when "any insured" intentionally concealed material facts clearly created joint obligations in the insureds. A simple comparison of the definitions of the words "the," "an," and "any" convinces this court that the phrase "an insured" as used in Fireman's Fund's policy creates the same expectation in an insured as the phrase "any insured" as interpreted in *Sales*, supra. Although this policy language creates a joint obligation between co-insureds (compare *Richards*, supra, with *Sales*, supra, and *Meyers v. State Farm Fire &c. Co.*, 801 FSupp. 709, 717 (N.D. Ga. 1992)), the Estate argues that such an attempt violates the mandate of OCGA § 33-32-1 (a). The Estate's argument has not been presented previously to any Georgia court. See *Richards*, supra; *Sales*, supra; *Meyers*, supra.

OCGA § 33-32-1 (a) requires that fire insurance policies covering Georgia property contain "language at least as favorable to the insured as the applicable portions of the standard fire policy. . . ." The applicable portion of the Standard Fire Policy provides that "[t]his entire policy shall be void if, whether before or after a loss, *the* in-

sured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by *the* insured relating thereto." (Emphasis supplied.) Rules of Comptroller General, Insurance Department, § 120-2-19-.01.

Whether the application of OCGA § 33-32-1 (a) requires that the concealment provision in Fireman's Fund's insurance contract must be reformed, despite its lack of ambiguity, to conform with the fraud clause in the Standard Fire Policy, which was found to be ambiguous in *Richards*, is a question of first impression in this state. However, other jurisdictions addressing the same basic issue have determined that the Standard Fire Policy sets forth the minimum coverage upon which an insured can rely and insurance coverage must be conformed to that provided by the Standard Fire Policy. See *Borman v. State Farm Fire &c. Co.*, 499 NW2d 419, 421 (Mich. App. 1993); *FBS Mtg. Corp. v. State Farm Fire &c. Co.*, 833 FSupp. 688, 695 (N.D. Ill. 1993); and *Ponder v. Allstate Ins. Co.*, 729 FSupp. 60 (E.D. Mich. 1990).

In Georgia, the clear mandate of OCGA § 33-32-1 (a) requires that the language of Fireman's Fund's insurance policy be as favorable to the insured as the language in the Standard Fire Policy. Under *Richards*, supra, the use of "the insured" in the fraud provision Standard Fire Policy must be construed to provide several obligations as to each co-insured. Therefore, the minimum coverage allowed in Georgia creates several obligations as to each co-insured and Fireman's Fund's insurance contract must be reformed to conform with the minimum coverage provided in the Standard Fire Policy. The trial court was correct in denying Fireman's Fund's motion for summary judgment and motion for directed verdict.[3]

2. Fireman's Fund next enumerates that the trial court erred in failing to grant its motion for directed verdict on the issue of bad faith. Fireman's Fund contends that the Estate's claim for bad faith and attorney fees pursuant to OCGA § 33-4-6, was technically deficient and without substantive merit. We agree that the Estate's claim for bad faith lacked substantive merit and we do not reach its alleged technical deficiencies.

"To support a cause of action under OCGA § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith. A defense going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the

---

[3] Fireman's Fund complains that the Estate failed to argue the provisions of OCGA § 33-32-1 (a) below and, therefore, we should not consider the Estate's position. However, we can consider additional bases for upholding a trial court's ruling or order under our "right for any reason" analysis. See *Lyberger v. Robinson*, 207 Ga. App. 845, 846 (429 SE2d 324) (1993).

company as effectually as would a complete defense to the action." (Citations and punctuation omitted.) *Massachusetts Bay Ins. Co. v. Hall*, 196 Ga. App. 349, 355 (395 SE2d 851) (1990). Furthermore, "our courts have consistently held that no bad faith exists where there is a doubtful question of law involved." (Citations and punctuation omitted.) *Schoen v. Atlanta Cas. Co.*, 200 Ga. App. 109, 111 (407 SE2d 91) (1991). This is especially true where the case presents issues of first impression. Id.

This is a case of first impression in which Fireman's Fund presented a legal defense adopted by other courts. See *Sales*, supra; *Meyers*, supra; *Spezialetti v. Pacific Employers Ins. Co.*, 759 F2d 1139, 1141-1142 (3rd Cir. 1985). Furthermore, the argument upon which this opinion is based was not presented prior to this appeal. See Division 1. Therefore, we find that the trial court erred in failing to grant Fireman's Fund's motion for directed verdict on the issue of bad faith and attorney fees.

3. In its fourth enumeration of error, Fireman's Fund asserts that the trial court erred in failing to grant their motion for directed verdict on the Estate's claim for personal property damages. Fireman's Fund argues that the Estate failed to present any evidence as to the value of the subject property. The jury returned a verdict of $51,986.50 for damage to personal property. Fireman's Fund complains that no evidence as to cost, age, or condition of the personal property was introduced.

"Questions of value are peculiarly for the determination of the jury, where there is any data in the evidence upon which the jury may legitimately exercise their own knowledge and ideas. The items involved in this case were of a relatively common nature, so that the jury was not limited to consideration of expert opinion testimony in forming its own opinion of the property's market value." (Citations and punctuation omitted.) *Atlanta Commercial Builders v. Polinsky*, 148 Ga. App. 181, 182 (250 SE2d 781) (1978). In the present case, the Estate introduced a five-page list of personal property destroyed in the fire. The list was prepared by the decedent's son from his memory of the items in his parents' house. It contained entries such as "Pool table — standard size, slate top, high quality" and "Kitchen table with 4 chairs." The value of the items claimed was within the general ken of a jury. Therefore, the trial court did not err in failing to grant Fireman's Fund's motion for directed verdict as to personal property damages.

4. Fireman's Fund asserts that the trial court erred in allowing the Estate to present evidence that no insured was criminally convicted of arson. We agree that evidence of a criminal conviction or acquittal is not probative of the issues in a civil case regarding the same incident. However, in the present case, the introduction of testi-

mony to the effect that no insured had been convicted of arson was harmless.

*Judgment affirmed in part and reversed in part. Pope, C. J., concurs. McMurray, P. J., concurs in Divisions 1, 3, 4 and in the judgment. Johnson, J., disqualified.*

DECIDED FEBRUARY 7, 1994 —
RECONSIDERATIONS DENIED MARCH 3, 1994 — 

*Swift, Currie, McGhee & Hiers, Michael H. Schroder, Mary Beth Gibson, Dermer & Black, Stephen Dermer,* for appellant.

*Dean, Setliff & Smith, William T. Dean, Jr., Johnson & Ward, William D. deGolian, D. Lake Rumsey, Jr.,* for appellees.

*Goodman, McGuffey, Aust & Lindsey, Edward H. Lindsey, McKenzie, Martin, Taylor & McConnaughey, Michael A. McKenzie, Timothy A. Bumann,* amici curiae.