A94A1426. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. ROLAND et al.
(452 SE2d 548)

SMITH, Judge.

Charles and Frances Roland were the named insureds in a Georgia Farm Bureau Mutual Insurance Company homeowner's insurance policy. After the house identified in the policy was destroyed by fire, Georgia Farm Bureau denied the Rolands' claims, and the Rolands filed separate actions which were joined by order of the trial court. Georgia Farm Bureau moved for summary judgment as to Frances Roland on the basis that she did not reside in the house at the time of the loss. That motion was denied.

Upon trial of the case, the jury returned a verdict for Charles Roland and Frances Roland for the insured value of the house and its contents, for Charles Roland for attorney fees, and for Frances Roland for bad faith penalties and attorney fees.

Georgia Farm Bureau appeals the denial of its motion for summary judgment on the issue of Frances Roland's residence, the trial court's failure to allow outside the presence of the jury a proffer of evidence regarding residence, and the trial court's directed verdict in favor of Frances Roland on the issue of liability. Georgia Farm Bureau also appeals the denial of its motion for directed verdict on the issue of bad faith penalties and attorney fees.

The evidence establishes that Charles and Frances Roland were married in 1975, and both resided in the house named in the policy until October 1990. In early October, Frances Roland separated from her husband, moved out of the house, and ultimately filed for divorce. A hearing was held on the divorce, a decree was issued as of January 4, 1991, and it was entered on March 12, 1991. Frances Roland testified on her deposition that she moved to Florida in October 1990 and lived there until she moved to Tennessee in January 1992. She did not reside in the house named in the policy at any time after October 8, 1990.

The policy contains a "special provision" that requires "the residence premises [must be] the only premises where *the named insured or spouse* maintains a residence other than business or farm properties." (Emphasis supplied.)

1. The issue of Frances Roland's failure to maintain exclusive residence in the insured premises at the time of the fire is controlled by the decisions of this court in *Schroeder v. Ga. Farm &c. Ins. Co.*, 211 Ga. App. 302 (439 SE2d 18) (1993) and *Ga. Farm &c. Ins. Co. v. Kephart*, 211 Ga. App. 423 (439 SE2d 682) (1993) (involving identical policy language). Because the evidence established that the policy unambiguously required Frances Roland, as a named insured, to live at the "residence premises," and she was not living there at the time of the fire, no coverage existed for her claim. Id. at 425 (1) (c).

The dissent would overextend the application of OCGA § 33-32-1 (a) and the decisions interpreting it, and it would overrule sub silentio such decisions as *Schroeder* and *Kephart*. The dissent relies upon *Fireman's Fund Ins. Co. v. Dean*, 212 Ga. App. 262, 265 (1) (441 SE2d 436) (1994), but it involved a substantially different issue: the protection of an insured's estate from policy language which held it responsible for the misconduct of another insured (arson and murder of the innocent insured). The dissent seeks to expand that decision to all-inclusive proportions, in effect holding that OCGA § 33-32-1 (a) forbids any alteration or addition to the wording of the Standard Fire Policy which conceivably could limit the insurer's obligations under the policy, even though alterations and additions are provided for in the standard form itself. This constitutes a substantial and unprecedented restriction of the right to contract and a violation of the well-established public policy of this state. See *Jefferson Pilot Life Ins. Co. v. Clark*, 202 Ga. App. 385, 389 (2) (414 SE2d 521) (1991); *Nat. Consultants v. Burt*, 186 Ga. App. 27, 32 (2) (366 SE2d 344) (1988).

However, the Standard Fire Policy itself, Ga. Comp. R. & Regs., § 120-2-19.01, provides ample authority for the policy language relied upon by Georgia Farm Bureau here. For example, the language omitted by the dissent from its quotation of the permitted "conditions suspending or restricting insurance" reads as follows: "Unless other-

wise provided in writing added hereto this Company shall not be liable for loss occurring (a) *while the hazard is increased by any means within the control or knowledge of the insured. . . ."* (Emphasis supplied.) Id. at 283, lines 28-32. As observed in *Kephart*, supra at 426, a change in occupancy constitutes an increased hazard or risk, which under the terms of the policy would void coverage.

The Standard Fire Policy at page 282, lines 1-6, also provides for voiding the policy on the basis of a material misrepresentation. The special provisions section of the policy quoted above constitutes a representation in clear and unambiguous terms that the insured property is the only residence of the insureds. This court must construe the insurance contract as made, and the Rolands' failure to comply with this policy provision voided the policy as a matter of law. *Schroeder*, supra, 211 Ga. App. at 304-305. See also *Kephart*, supra, 211 Ga. App. at 425 (1) (c).

Finally, by prefacing the relevant section with the qualifier "[u]nless otherwise provided in writing," the Standard Fire Policy clearly recognizes that the parties to the insurance contract may agree to special conditions varying from the standard language. This is consistent with the right of parties in Georgia to contract as they wish and to make the provisions of policies of insurance meet the facts and circumstances of the individuals insured, the property insured, the risk, and the premium charged therefor. To create a Procrustean bed of an unamendable Standard Fire Policy would not only change the longstanding law of Georgia, but do a profound disservice to both insurers and insureds.

While the result in this case appears harsh, it is the agreement contracted for by the parties. As observed in Presiding Judge Beasley's special concurrence in *Kephart*, the condition of residence extends throughout the life of the policy. 211 Ga. App. at 426-427. A change in the residence of the insureds contrary to the Special Conditions in the policy can result in an increase in hazard or risk to the insurer. The circumstances testified to here, showing at the minimum a potential for violence and vengeful acts growing out of the insureds' separation and divorce, demonstrate this amply. The trial court erred in denying Georgia Farm Bureau's motion for summary judgment with respect to Frances Roland.

2. In light of our decision in Division 1, the trial court erred in refusing to direct a verdict in favor of Georgia Farm Bureau with respect to Frances Roland's claim for bad faith penalties and attorney fees. With respect to the award of attorney fees to Charles Roland, the trial court also erred in refusing to direct a verdict in favor of Georgia Farm Bureau.

OCGA § 33-4-6 provides 60 days after a demand for payment has been made for the insurer to investigate the claim. As it imposes a

penalty, this Code section must be strictly construed. *Interstate &c. Ins. Co. v. Williamson*, 220 Ga. 323, 325 (2) (138 SE2d 668) (1964). Assertion by the insurer of a defense to a claim requires only "reasonable and probable cause" to avoid the penalties of the Code section. See *Rice v. State Farm &c. Co.*, 208 Ga. App. 166, 169 (1) (430 SE2d 75) (1993); *Mass. Bay Ins. Co. v. Hall*, 196 Ga. App. 349, 355-356 (3) (395 SE2d 851) (1990).

There was strong evidence that the fire was of incendiary origin, including multiple points of origin, low-level burning, the presence of kerosene, and the presence of a stepladder giving access to one of the points of origin.[1] There was also evidence of Roland's heavy drinking and mental instability as a result of the divorce, as well as threats to others and remarks suggesting, or at least expressing a hope, that the house might burn. With respect to evidence of opportunity, the City of Nelson fire department answered the call to the fire on Friday, March 1, 1991, at approximately 10:00 in the evening. While Roland testified he left the house for the ten-hour drive to Florida very early Friday morning, there was other testimony that he did not arrive in Florida until sometime on Saturday morning. Discovery of the fire was delayed for an undetermined period. In consequence, the variance in the testimony regarding the time of Charles Roland's departure for Florida gave reasonable cause to believe that there was opportunity to set the fire. Moreover, a fire obviously may be set by a person hired for that purpose. There was also evidence that Charles Roland had removed guns, jewelry, and other valuables from the house before the fire.

The dissent's position places too great a burden on the insurer under the terms of OCGA § 33-4-6. It acknowledges that the insurer found "strong evidence of arson and some evidence that Charles Roland had a motive." However, the dissent concludes that there was no reasonable defense as a matter of law, because there was no evidence of a delayed triggering device and Roland testified he had left the house "approximately 24 hours" before the fire began.[2]

Under the dissent's reasoning, an insurer must not only show reasonable and probable cause for making a defense, but must *prove* its defense, before trial and within 60 days of demand. This places an insurer in an impossible position: it must gather conclusive proof of each and every element of all potential defenses in a 60-day period or run the risk of imposition of bad faith penalties. All that is required by the law is reasonable and probable cause, and "[p]enalties for bad faith are not authorized where the insurance company has any rea-

---

[1] Charles Roland admitted to placing the ladder in the house.
[2] As noted above, this testimony was disputed by another witness.

sonable ground to contest the claim and where there is a disputed question of fact." (Citations and punctuation omitted.) *Mass. Bay Ins. Co. v. Hall*, supra, 196 Ga. App. at 355. The evidence presented of incendiary origin, combined with evidence of motive and opportunity on the part of Charles Roland, was sufficient to constitute reasonable and probable cause to contest the claim. The trial court accordingly erred in failing to direct a verdict in favor of Georgia Farm Bureau Insurance Company as to Charles Roland's claim under OCGA § 33-4-6.

*Judgment reversed. Pope, C. J., Birdsong, P. J., Beasley, P. J., Andrews, Johnson and Ruffin, JJ., concur. McMurray, P. J., and Blackburn, J., dissent.*

McMurray, Presiding Judge, dissenting.

It had appeared that in *Fireman's Fund Ins. Co. v. Dean*, 212 Ga. App. 262, 265 (1) (441 SE2d 436), this Court had finally breathed life into OCGA § 33-32-1 (a) by holding that, pursuant to this statute, the Standard Fire Policy (Rules of Comptroller General, Insurance Department, § 120-2-19-.01) sets forth the minimum coverage upon which an insured can rely, and that fire insurance coverage must be conformed to that provided by the Standard Fire Policy. It would thus have become an integral part of the construction of any Georgia fire insurance policy to determine if the mandate of the Standard Fire Policy is satisfied by the contractual language. Yet, in the case sub judice, the majority has in effect rendered OCGA § 33-32-1 (a), a nullity and limited the decision in *Fireman's Fund Ins. Co. v. Dean*, 212 Ga. App. 262, supra, to the specific facts of that case. The majority holds that the issue of whether coverage continued for Frances Roland after she terminated her residence in the insured house is controlled by the opinions of this court in *Schroeder v. Ga. Farm &c. Ins. Co.*, 211 Ga. App. 302 (439 SE2d 18) and *Ga. Farm &c. Ins. Co. v. Kephart*, 211 Ga. App. 423 (439 SE2d 682), two cases which involve only issues of contract construction and do not mention, much less address, the impact of the statutory language provided in OCGA § 33-32-1 (a) and presented as an issue in this case by plaintiff Frances Roland. As I disagree with the conclusion of the majority on this and other issues, I respectfully dissent. With the exception of the awards for bad faith penalties and attorney fees, I would uphold the judgment in favor of plaintiff Frances Roland.

The relevant portion of the Standard Fire Policy begins with line 28: "Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring . . . while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days. . . ." The mandate of OCGA § 33-32-1

(a) requires that the language of the insurance policy issued by defendant be as favorable to the insured plaintiffs. Since the Standard Fire Policy affords coverage so long as the house has not been vacant for a period in excess of 60 days, the contractual language suspending coverage as to a named insured who does not reside in the house is clearly less favorable to the insured and should be conformed to that provided by the Standard Fire Policy. Once the insurance coverage is conformed in this fashion, it becomes apparent that there was no suspension or restriction of Frances Roland's coverage under the policy simply because she ceased to reside in the house since the house was not left vacant for a period of greater than 60 consecutive days.

In my view, the majority has also misconstrued the Standard Fire Policy in several respects. First, the majority maintains that the change in residency of Frances Roland increased the hazard or risk insured so as to void the policy. However, this proposition is not based upon any factual assertion within the record of the case sub judice but upon a reference in the *Kephart* case to an increase in risk created by a violation of the terms of an insurance policy. The reference in *Kephart* is to an increase in risk to the insured not the insurer and is meaningless in relation to the issue in the case sub judice.

The majority is also mistaken in suggesting that there was any material misrepresentation in connection with the residency provisions of the insurance policy at issue in the case sub judice. This hypothesis is based upon an incorrect assumption that the residency provision contained in the insurance policy between the parties is valid.

Finally, in my view, the majority errs in holding paramount the rights of the parties to contract as they wish when to do so undermines a statutory scheme designed to protect the public from oppressive contracts of adherence. In my view, the Standard Fire Policy is not unamendable, but, pursuant to OCGA § 33-32-1 (a), may be amended only in a manner favorable to insureds.

I also disagree with the majority concerning the awards of bad faith penalties and attorney fees to plaintiff Charles Roland. " 'To support a cause of action under OCGA § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith. A defense going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the company as effectually as would a complete defense to the action.' (Citations and punctuation omitted.) *Massachusetts Bay Ins. Co. v. Hall*, 196 Ga. App. 349, 355 (395 SE2d 851) (1990). Furthermore, 'our courts have consistently held that no bad faith exists where there is a doubtful question of law involved.' (Citations and punctuation omitted.) *Schoen v. Atlanta Cas. Co.*, 200 Ga. App. 109, 111 (407 SE2d 91) (1991). This is especially true where the case presents issues of first

impression. Id." *Fireman's Fund Ins. Co. v. Dean*, 212 Ga. App. 262, 265 (2), supra. See also *Southern Fire &c. Ins. Co. v. Northwest Ga. Bank*, 209 Ga. App. 867 (2) (434 SE2d 729) and *Rice v. State Farm Fire &c. Co.*, 208 Ga. App. 166, 167 (1), 169 (430 SE2d 75).

Defendant's decision to refuse the claim of plaintiff Charles Roland was predicated on a conclusion that he had set the fire. This conclusion was predicated on evidence that kerosene had been used to accelerate the fire, that Charles Roland was the last person known to have been present at the house prior to the fire, that the house was for sale due to the impending divorce of the plaintiffs, that there had been instances of physical violence between the plaintiffs during that marriage, that Charles Roland had remarked concerning his resentment that a portion of the proceeds from the sale of the house would go to his wife, and that, upon his arrival in Florida for a visit with his girl friend on the morning prior to the fire, Charles Roland had remarked that maybe the house would burn down. However, there were pronounced weaknesses in defendant's theory that Charles Roland was an arsonist. At the time of the fire and for half a day prior thereto, Charles Roland was in Winter Haven, Florida, having made the ten hour or longer drive from the house during the night before that on which the fire occurred. The investigations of defendant's investigator and of the State Fire Marshal failed to discover any device which could have caused a delayed start to the fire. Additionally, there was evidence that Charles Roland had parted on unfriendly terms from the girl friend who was the source of the defendant's evidence as to Charles Roland's motive to commit arson.

Under these circumstances, I would hold that a jury could find a reasonable defense which indicates the good faith of the insurer. While defendant had strong evidence of arson and some evidence that Charles Roland had a motive, it had no evidence that he had any opportunity to set the fire which began approximately 24 hours after he had departed from the house. I would hold that the question of defendant's good faith or lack thereof in regard to Charles Roland was properly submitted to the jury and that the award of bad faith penalty and attorney fees to this plaintiff was authorized by the evidence.

I am authorized to state that Judge Blackburn joins in this dissent.

DECIDED DECEMBER 5, 1994 —
RECONSIDERATIONS DENIED DECEMBER 20, 1994 —

*Watson & Dana, Dennis D. Watson*, for appellant.
*Duard R. McDonald, Sabiston & Smith, E. Paul Sabiston*,

*Weaver & Weaver, George W. Weaver,* for appellees.