A94A2297. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. RICHARDSON.
(457 SE2d 181)

McMURRAY, Presiding Judge.

Linda Richardson a/k/a Linda Morgan (plaintiff) brought an action against Georgia Farm Bureau Mutual Insurance Company ("Farm Bureau") to recover under her homeowners insurance policy ("the policy") for losses allegedly sustained when her house was destroyed by fire. Plaintiff also sought attorney fees and penalties pursuant to OCGA § 33-4-6 because of Farm Bureau's alleged bad faith refusal to pay her claim. Farm Bureau denied liability under the policy, claiming that plaintiff intentionally burned her house; that plaintiff did not comply with a policy provision stipulating the insured premises as her only residence and that plaintiff made material misrepresentations during Farm Bureau's post-fire investigation. The case was tried before a jury and the evidence, construed in a light which most favorably supports the jury's verdict, authorizes the following:

Farm Bureau issued a policy of insurance providing coverage for certain losses to plaintiff's home with limits of $40,000 for the real property and $20,000 for contents of plaintiff's home. A pertinent provision of the policy provides: "**Concealment or Fraud.** We do not provide coverage for an **insured** who has . . . intentionally con-

cealed or misrepresented any material fact or circumstance; or . . . made false statements or engaged in fraudulent conduct . . . relating to this insurance." Under a section of the policy entitled, "**SPECIAL PROVISIONS**," it is stipulated that "the **residence premises** is the only premises where the Named Insured or spouse maintains a residence other than business or farm properties. . . ." The policy also provides no coverage for "**Intentional Loss**, meaning any loss arising out of any act committed . . . by or at the direction of an **insured;** and . . . with the intent to cause loss."

At about 5:00 in the afternoon of October 17, 1991, the Hall County Fire Department received a report that the insured premises was burning. When fire fighters arrived on the scene, the house was engulfed in flames. It was too late, plaintiff's house was gone and so were its contents. Plaintiff and her two young children were at the home of a close friend at the time of the blaze and, when plaintiff learned of the fire the next day, she contacted her Farm Bureau agent and met him at the scene. Plaintiff then discovered that the destruction was total. Unfortunately, coverage under the policy was insufficient to make up for the loss as plaintiff (in an apparent attempt to save cost) had recently instructed her Farm Bureau agent to decrease coverage under the policy.

Captain Thomas F. Cannon of Hall County Fire Services investigated the fire and concluded that a flammable liquid was used to accelerate the blaze. Captain Cannon suspected arson because the house was not occupied at the time of the fire and it appeared to him that a flammable liquid had been used to accelerate the flame. The captain questioned plaintiff and learned that she was recently divorced and that she was at the home of a male companion at the time of the fire. Captain Cannon excluded the possibility that plaintiff actually set the blaze, but he did not exclude that plaintiff may have been involved. However, Captain Cannon did suspect plaintiff's former spouse, reasoning that financial gain and domestic vengeance are common reasons for arson. Indeed, it turns out that plaintiff's former spouse may have had financial motive for committing arson as he was a co-obligor on debts secured by the plaintiff's premises.

Farm Bureau employed a private investigator, Larry Cornett, to determine the origin of the fire that destroyed plaintiff's home. Cornett visited the fire scene and took samples of materials he suspected of being affected by a flammable liquid. Although subsequent laboratory tests were negative for the presence of residue of a flammable liquid on the samples taken from the fire scene, Cornett, nonetheless, concluded that the fire had been accelerated by a flammable liquid. He based this conclusion on observations of suspected burn patterns within the remains of the burned dwelling and the unusually rapid speed in which the fire spread. In his final analysis, Cornett

affirmed (at trial) that the fire had "characteristics of an insurance fire for profit[.]"

During the course of its investigation, Farm Bureau representatives discussed the loss with plaintiff on four separate occasions. Plaintiff first gave a statement to her Farm Bureau agent. She then consented to a recorded statement in response to questioning by a Farm Bureau claims investigator. Next, plaintiff submitted to examination, under oath, before an attorney retained by Farm Bureau and a certified court reporter. Before questioning, Farm Bureau's attorney warned plaintiff that "misrepresentations made during an examination under oath or during the investigation of a claim can give the insurance company the right to void your coverage and not to pay the claim." Plaintiff later submitted to similar questioning by Farm Bureau's attorney during a deposition taken pursuant to pre-trial discovery. Although responses plaintiff made during these interrogations include inconsistent statements regarding plaintiff's intimacies with a male companion (purportedly germane to the residency requirement under the policy) and certain omissions regarding aspects of her financial affairs at the time of the fire, plaintiff turned over most all of her financial records to Farm Bureau during the post-fire investigation and she advised Farm Bureau's representatives that she was behind in paying a secondary debt encumbering the insured premises. In fact, plaintiff's initial disclosures along with the financial records she turned over to Farm Bureau indicate that plaintiff was financially broke at the time of the fire and that she was delinquent in paying certain debts, including substantial medical bills incurred for the care of her children.

The jury returned a special verdict for plaintiff, awarding $40,000 for the loss of her home, $10,300 for loss of personal property within the premises, $6,790.50 as a bad faith penalty and $24,900 in attorney fees. The jury marked "Yes" below a question on the special verdict form which inquired as follows: "Do you find from the evidence that Georgia Farm Bureau's denial of the Plaintiff's claim amounted to a frivolous and unfounded refusal to pay her claim?" This appeal followed the denial of Farm Bureau's motion for judgment n.o.v. *Held*:

1. Farm Bureau contends the trial court erred in denying its motions for directed verdict and for judgment n.o.v. based on its misrepresentation defense. In this regard, Farm Bureau contends that plaintiff "lied . . . in her recorded statement and in her examination under oath when she said (1) she was having 'no problem' making her mortgage payments . . .; (2) she was up-to-date with [the primary obligation encumbering the insured premises] and only one payment behind to [an individual holding a subordinate security interest encumbering the insured premises] at the time of the fire . . .; (3) she had not been refused credit when applying for loans prior to the fire . . .; (4) she

was up to date on all utility bills . . .; (5) she was not romantically involved with [the man she and her children were visiting on the night of the fire] until after the fire . . .; (6) she was living in her house continuously, using normal amounts of electricity, until a few days to a week before the fire . . .; and (7) she took her mail out of the mailbox every day before the fire."

"Provisions such as that involved in the [case sub judice] which declare the entire insurance policy void upon misrepresentation or concealment of any material fact, fraud, or false swearing by the insured have been held to be applicable to proofs of loss and other statements made under oath by the insured. '(Such a provision) would cover cases of fraudulent misrepresentation of material facts or circumstances, made by (the insured) to the company or its agents that might affect the action of the insurer in respect to settling or adjusting the claim of the insured. . . .' *Goldberg v. Provident Washington Ins. Co.*, 144 Ga. 783, 790 (87 SE 1077) (1942). See also *American Alliance Ins. Co. v. Pyle*, 62 Ga. App. 156 (4) (8 SE2d 154) (1940); Couch on Insurance 2d § 49A:60." *State Farm Fire &c. Co. v. Jenkins*, 167 Ga. App. 4 (1), 5 (305 SE2d 801). Generally, it is a jury question as to whether a misrepresentation may have actually affected the action of the insurer with respect to settling or adjusting a claim. See *United Family Life Ins. Co. v. Shirley*, 242 Ga. 235, 236 (248 SE2d 635). However, the issue may sometimes be resolved as a matter of law by the court where the evidence excludes every reasonable inference except that it is material. *Woods v. Independent Fire Ins. Co.*, 749 F2d 1493, 1497 (11th Cir. 1985).

In the case sub judice, we understand how the above quoted misrepresentations regarding disposition of plaintiff's financial obligations may have been material to Farm Bureau's post-fire investigation as it relates to plaintiff's motive for arson and (more remotely) how the frequency of plaintiff's overnight visits (due to a romantic relationship) with a man who resided at a residence other than the insured premises may be relevant to an investigation concerning whether plaintiff was residing at a place other than the insured premises in violation of the residency requirement in the policy. However, assuming (without deciding) that plaintiff uttered the above statements under oath and that the statements actually turned out to be false, we cannot say (as a matter of law) that plaintiff uttered them with a clear intent to mislead or otherwise defraud Farm Bureau. "It must appear that [an insured's] false statements were made wilfully and intentionally for the purpose of defrauding the insurer." *American Alliance Ins. Co. v. Pyle*, 62 Ga. App. 156, 164 (4), supra. In fact, if there is any evidence to support a jury's finding in this regard, the denial of a motion for directed verdict or a motion for judgment notwithstanding must be affirmed. *Southern Gen. Ins. Co. v. Holt*, 262

Ga. 267, 268 (1) (416 SE2d 274).

In the case sub judice, there is evidence that plaintiff advised a Farm Bureau investigator at the very outset of the post-fire investigation that she was staying with her friend on the night of the fire because it was cold, one of her children had pneumonia and she did not have enough money to purchase heating fuel for her house. There is also evidence that plaintiff informed Farm Bureau during its investigation that she was a month behind on a secondary obligation encumbering the insured premises; that she owed substantial medical bills ($1,000) incurred for the care of her children; that she had previously attempted to sell or rent the insured premises (apparently without success); that there was no refrigerator in the house at the time of the fire because she could not afford one and that she sold the stove in the house at a yard sale because it was not functional. Further, it is undisputed that plaintiff turned detailed financial records over to Farm Bureau during the post-fire investigation indicating a clear picture of plaintiff's lack of income and the volume of her debt obligation. Considering this proof of plaintiff's candor to Farm Bureau as to her grim economic situation at the time of the fire loss, we cannot say (as a matter of law) that plaintiff uttered the presumably false statements regarding her finances with the intent to dupe Farm Bureau into believing that she was not having financial difficulties at the time of the fire. Further, we do not find plaintiff's sworn statement regarding the timing of her intimate relationship with another man material (as a matter of law) to Farm Bureau's inquiry as to whether plaintiff was residing at the insured premises at the time of the fire. Indeed, the jury may have inferred that plaintiff uttered this purportedly false statement regarding her personal affairs out of modesty. Finally, the alleged misrepresentations regarding plaintiff's statements that "(6) she was living in her house continually, using normal amounts of electricity, until a few days to a week before the fire . . .; and [that] (7) she took her mail out of the mailbox every day before the fire" were not conclusively shown to be false. On the contrary, these were hotly disputed issues of fact at trial. Consequently, the jury was authorized in rejecting Farm Bureau's defenses that plaintiff uttered false statements with an intent to deceive and, in this regard, the trial court did not err in denying Farm Bureau's motions for directed verdict and for judgment n.o.v. *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268 (1), supra.

2. Farm Bureau next contends the trial court erred in denying its motions for directed verdict and for judgment n.o.v. as to plaintiff's claim for bad faith penalties and attorney fees.

"OCGA § 33-4-6 provides 60 days after a demand for payment has been made for the insurer to investigate the claim. As it imposes a penalty, this Code section must be strictly construed. *Interstate &c.*

*Ins. Co. v. Williamson,* 220 Ga. 323, 325 (2) (138 SE2d 668) (1964). Assertion of a defense to a claim by the insurer requires only 'reasonable and probable cause' to avoid the penalties of the Code section. See *Rice v. State Farm &c. Co.,* 208 Ga. App. 166, 169 (1) (430 SE2d 75) (1993); *Mass. Bay Ins. Co. v. Hall,* 196 Ga. App. 349, 355-356 (3) (395 SE2d 851) (1990)." *Ga. Farm Bureau Mut. Ins. Co. v. Roland,* 215 Ga. App. 834, 836 (2) (452 SE2d 548). While the question of "reasonable and probable cause [for refusing to pay a claim within the prescribed period of time would seem to be a jury question,] [t]his type of directed verdict case is somewhat of an anomaly. Normally the standard for directed verdict and judgment n.o.v. are the same: '(w)here there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed.' *Pendley v. Pendley,* 251 Ga. 30 (302 SE2d 554). However, it is the very fact that certain factual issues regarding the merits of a claim are in genuine conflict that causes there to be no conflict, as a matter of law, whether an insurance company had reasonable grounds to contest a particular claim. In reaching this determination a court should carefully scrutinize any claim of a contest in facts to preclude the reliance by an insurance company on fanciful allegations of factual conflict to delay or avoid legitimate claims payment." *Rice v. State Farm Fire &c. Co.,* 208 Ga. App. 166, 167 (1), 169 (430 SE2d 75). In the case sub judice, we have carefully scrutinized the evidence of record and we cannot conclude, as a matter of law, that Farm Bureau had "probable cause" to contest plaintiff's claim.

Farm Bureau's decision to refuse plaintiff's claim within the prescribed number of days was predicated on suspicion that plaintiff was not residing at the premises at the time of the fire and that plaintiff set the fire or had someone set it for her. However, the only evidence supporting Farm Bureau's conclusion in this regard was that the fire may have been accelerated by a flammable liquid; that plaintiff was having financial difficulties at the time of the loss; that plaintiff may have uttered conflicting statements to a Farm Bureau investigator regarding her house payments and utility bills; that a neighbor had not seen plaintiff at home much before the fire; that a mail carrier noticed mail stacking up in plaintiff's mail box before the fire and that plaintiff and her children were not at home at the time of the fire. On the other hand, there was absolutely no proof that plaintiff actually set the fire or that she had conspired with someone to set the fire. On the contrary, the jury heard evidence that Farm Bureau either knew or had access to information within 60 days of plaintiff's claim that plaintiff had decreased coverage on the premises before the fire to reduce the cost of her premium; that plaintiff had made a payment on the primary obligation encumbering the insured premises the day

before the fire; that the fire destroyed virtually every item of personal property plaintiff owned and that plaintiff was not at home at the time of the fire because she was protecting the health of her sick child. Further, the evidence is overwhelming that plaintiff fully cooperated during Farm Bureau's post-fire investigation. In fact, it is undisputed that Farm Bureau did not even collaborate with Captain Cannon in investigating the nature of the fire before coming to trial. Under these circumstances and in light of undisputed proof that plaintiff complied with every discovery request made by Farm Bureau, we cannot say the evidence demanded a verdict against plaintiff with regard to her claim that Farm Bureau acted in bad faith in refusing to pay her claim. Consequently, since the evidence did not demand a verdict that Farm Bureau could not be held liable under OCGA § 33-4-6, either for the imposition of bad faith penalties or for attorney fees, the trial court did not err in denying Farm Bureau's motions for directed verdict and for judgment n.o.v. in this regard.

*Judgment affirmed. Pope, P. J., concurs. Smith, J., concurs in judgment only.*

DECIDED MARCH 16, 1995 —
RECONSIDERATION DENIED MARCH 31, 1995 —

*Swift, Currie, McGhee & Hiers, Michael H. Schroder, Frederick O. Ferrand*, for appellant.

*Sartain Law Offices, Frank R. McKay, Bonnie C. Oliver*, for appellee.