CAPITAL CITY INSURANCE CO., Plaintiff,

v.

RICK TAYLOR TIMBER CO., INC.; Mark C. Medders; Terry W. Crews; Interstate Indemnity Co.; Billy Davis; Morgan Drive Away, Inc.; Empire Fire and Marine Insurance Co., Defendants.

Civil A. No. CV594-19.

United States District Court, S.D. Georgia, Waycross Division.

Sept. 15, 1995.

Charles W. Brannon, Jr., Kennedy, Lewis, Smart & Brannon, Savannah, GA, for Capital City Insurance Company.

Joseph Jefferson Hennesy, Jr., Farrar, Farrar & Hennesy, Douglas, GA, for Terry W. Crews.

Richard A. Rominger, Edward Reidar Stabell, III, Gabrielle Marder Mann, Brennan, Harris & Rominger, Savannah, GA, for Interstate Indemnity Company, Billy Davis, and Morgan Drive Away, Incorporated.

## ORDER

MOORE, District Judge.

This case is before the Court on the Motions for Summary Judgment filed by Defendants Terry W. Crews, Interstate Indemnity Co., Billy Davis, Morgan Drive Away, Inc., and Empire Fire and Marine Insurance. In its Complaint for Declaratory Judgment, the Plaintiff seeks to have this Court adjudge that Plaintiff is not obligated to defend or insure Defendant Mark C. Medders or Defendant Rick Taylor Timber Co., Inc. (hereinafter RTTC), for a traffic accident resulting in personal injury and property damage to the other Defendants. For the reasons stated herein, Defendants' Motions for Summary Judgment are hereby **GRANTED.**

## FACTS

The following facts are, for the most part, undisputed.

The issue in this case is whether Plaintiff insurer is obliged to defend and insure RTTC for a July 23, 1993, incident wherein an RTTC truck driven by Medders collided with another truck. The present dispute arises out of negotiations for renewal of a liability insurance contract between RTTC and Plaintiff through its agent, Davis–Garvin Agency. In the month of July 1993, prior to the accident in question, Plaintiff learned of an unfavorable commercial truck driving record of Medders. Knowing that RTTC employed Medders as a truck driver, Plaintiff informed RTTC that, prior to the issuance of the insurance contract, RTTC would have to assure Plaintiff that it had removed Medders from truck driving duties and would not allow him to drive any RTTC rigs in the future[1]. RTTC's Ricky Taylor signed a letter verifying that Medders had been removed from his company's employ as of July 7, 1993[2]. The letters were not incorporated into, referred to or mentioned in the actual insurance contract. Upon receiving the RTTC letter, the Plaintiff issued a business automobile insurance contract effective retroactively to July 1, 1993.

On July 23, 1993, Medders operated a tractor trailer owned by RTTC. Taylor, the owner of RTTC, had granted Medders permission to drive the diesel truck. While Medders was driving the truck, he collided with another vehicle. Claims and reports were filed with Plaintiff which, on July 29, learned of Medders' involvement in the collision. In early August, Plaintiff received and kept RTTC's premium payment for the month of July. Effective August 1, 1993, Plaintiff and Davis–Garvin switched RTTC's liability coverage to a policy underwritten by Hanover Insurance. Plaintiff did not take steps to rescind the July insurance coverage and, now, does not controvert that the insurance policy was valid for that month[3].

Subsequent to this accident, several parties asserted claims against Medders, RTTC and the Plaintiff insurer. These interested parties, along with Medders and RTTC, are Defendants in this action. Plaintiff now seeks to have this Court declare that Plaintiff owes no duty to defend Medders and RTTC nor to indemnify them for any damages which might be adjudicated as a result of the pending legal actions.

## ANALYSIS

### I. When summary judgment is appropriate.

Summary judgment will be rendered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED.R.CIV.P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting FED.R.CIV.P. 56 advisory committee's note). This Court's analysis ends "where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law." Great Lakes Dredge & Dock Co. v. Miller, 957 F.2d 1575, 1578 (11th Cir.1992); Real Estate Fin. v. Resolution Trust Corp., 950

---

**1.** The relevant portion of this July 6, 1993, communication reads: "Please forward written confirmation that Mr. Medders has indeed been removed from driving duties so that your coverage will be renewed without delay." Dana Fusaro, an account coordinator with Davis–Garvin, wrote the letter.

**2.** This letter, dated July 13, 1993, was addressed to Davis–Garvin. The text reads in full: "As of July 07, 1993 Mark Medders will no longer be driving a vehicle that belongs to Rick Taylor Timber Company, Inc." As owner of RTTC, Taylor signed the letter.

**3.** The policy declares that Plaintiff "will pay sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." The policy defines "'insured'" as "anyone ... using with [RTTC's] permission a covered 'auto' [RTTC] owns."

F.2d 1540, 1543 (11th Cir.1992) (both citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384, 1387–88 (11th Cir.1991), *cert. denied*, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991). The substantive law governing the action determines whether an element is essential. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499, 1505 (11th Cir.1989), *cert. denied*, 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Thompson v. Metropolitan Multi–List, Inc.*, 934 F.2d 1566, 1583 n. 16 (11th Cir.1991), *cert. denied*, 506 U.S. 903, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. If the nonmovant's response to the summary judgment motion consists of nothing more than mere conclusory allegations, then this Court must enter summary judgment in the moving party's favor. *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [then] there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512; *Johns v. Jarrard*, 927 F.2d 551, 556 (11th Cir.1991).

In assessing whether the movant is entitled to summary judgment in its favor, the district court must review the evidence and reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992); *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir.1991). This Court must avoid weighing conflicting evidence during this endeavor. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir.1987). A mere "scintilla" of evidence supporting the nonmovant's position, however, will not suffice to prevent the granting of summary judgment. *See, e.g., Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir.1989) (citation omitted).

II. *Plaintiff's claim for declaratory relief based upon the theory of material misrepresentation.*

In its brief, Plaintiff points to Georgia statutory law in an attempt to show that it may avoid the insurance policy *ab initio* by showing that, but for Taylor's misrepresentation, it would not have renewed the insurance contract. Georgia law demonstrates that this material misrepresentation theory is unavailable to Plaintiff in this action.

The statute to which Plaintiff refers provides that an insurance company may deny recovery to an insured if the insured made misrepresentations which were "material either to the acceptance of the risk or to the hazard assessed by the insurer," O.C.G.A. § 33–24–7(b)(2), or if

> the insurer in good faith would not have issued the policy or contract or ... would not have provided coverage with respect to

the hazard resulting in the loss if the true facts had been known to the insurer as required by the application for the policy on contract or otherwise.

O.C.G.A. § 33–24–7(b)(3). In interpreting the import of this statute, Plaintiff utilizes *Davis v. Hancock Mutual Life Ins. Co.* for the proposition that misrepresentations for procurement of insurance are warranties. 202 Ga.App. 3, 5, 413 S.E.2d 224 (1991) (citing *United Family Life Ins. Co. v. Shirley*, 242 Ga. 235, 238, 248 S.E.2d 635 (1978)). Therefore, Plaintiff argues, all it need show to prevent recovery is that Taylor intentionally breached the warranty by allowing Medders to drive one of the RTTC trucks. *Columbian Nat'l Life Ins. Co. v. Mulkey*, 146 Ga. 267, 91 S.E. 106 (1916).

Though O.C.G.A. § 33–24–7 does seem to provide relief to insurance companies who are able to prove misrepresentation by insureds, its value can only be realized by those insurers which take the proper procedural cautions. Plaintiff in its dissertation of Georgia case law fails to discuss, distinguish or even mention *Georgia Int'l Life Ins. Co. v. King*, 120 Ga.App. 682, 172 S.E:2d 167 (1969). In discussing the insurers' escape hatches provided by Code Ann. § 56–2409 (now O.C.G.A. § 33–24–7), the *King* court came forward with this ruling of law which now controls the present case:

> It is clear ... that the paper on which the insurer relies, a copy of which must be physically attached to the policy by it, must also be shown to have been intended as part of the policy, or a part of the application which is also attached to and expressly recited to be a part of the policy, before it may be considered in relation to Code Ann. § 56–2409 as a defense material to the acceptance of the risk or hazard assumed or that the insurer would not have issued the policy if the true facts had been known.

*Id.* at 684, 172 S.E.2d 167. The court observed that a "contract of insurance includes all 'clauses, riders, endorsements and papers attached * * * thereto and a part thereof.' " *Id.* at 683, 172 S.E.2d 167 (quoting Code Ann. § 56–2402 (now O.C.G.A. § 33–24–1(1))). The policy in *King* contained a merger clause which read: " 'The policy and the application, a copy of which is attached, constitute the entire contract * * *. No statement shall void the policy or be used in defense of a claim unless it is contained in the application.' " *Id.*

The insurance contract between RTTC and the Plaintiff contains this merger clause which bears the same legal significance as the one present in *King*:

### B. CHANGES

> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of the policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

Rather than discuss *King* and the effect to be given the merger clause, Plaintiff dismisses the presence of this clause as "irrelevant". Under *King*, the merger clause is *indeed* relevant. Unfortunately for Plaintiff, under the material misrepresentation theory for declaratory relief, it is also determinative. A review of Plaintiff's pleadings and of the insurance policy issued by Plaintiff indicates that the parties did not seek to incorporate, attach or refer to the letters between RTTC and Plaintiff's agent. These letters, therefore, are not part of the insurance contract. *Id.* As a consequence, any misrepresentations contained therein are not governed by O.C.G.A. § 33–24–7. *Id.* at 684, 172 S.E.2d 167.

Plaintiff did not take the steps any prudent and cautious insurer would to prevent exactly this type of situation. Had Plaintiff only attached a driver exclusion form to the policy, it could have availed itself of the material misrepresentation defense and possibly avoided liability. *See, e.g., Atlanta Casualty Co. v. Cash*, 209 Ga.App. 123, 433 S.E.2d 311 (1993), *cert. denied.* Plaintiff did not, however, do so. This Court cannot now ignore Georgia law and reward this oversight. Summary judgment is therefore granted regarding Plaintiff's material misrepresentation basis for declaratory relief.

III. *Plaintiff's claim for declaratory relief based upon the theory of fraud in the inducement.*

■ As a preliminary matter, Defendants wish to have ruled that, even if fraud did occur, Plaintiff can only cancel the insurance policy prospectively and according to the cancellation guidelines of the relevant Georgia statutes. O.C.G.A. §§ 33–24–44 and 33–24–45. Defendants, however, ignore the term which describes for whom these statutes were written. This statutory cancellation provision applies only where the insured in question is "a natural person." O.C.G.A. § 33–24–45(b)(1). RTTC, as the named insured, is not a natural person. It is a corporation. Georgia law clearly states that a lesser duty is owed to corporate insureds than to those who are natural persons and O.C.G.A. § 33–24–45(b)(1) does not apply to corporations. *See Home Materials, Inc. v. Auto Owners Ins. Co.*, 250 Ga. 599, 600–01, 300 S.E.2d 139 (1983), *reh'g denied.* Therefore, the provisions cited by the Defendants do not prevent retrospective cancellation of coverage as a matter of law. Since the theory of fraud is generally available to the Plaintiff, it must now be determined whether Plaintiff may rely on this theory under the particular facts of this case.

■ Georgia statutory law provides: "Fraud renders contracts voidable at the election of the injured party." O.C.G.A. § 13–5–5. Further, "[f]raud which constitutes a ground for voiding a contract under O.C.G.A. § 13–5–5 must be fraud which induced the parties to enter the contract." *Leventhal v. Seiter*, 208 Ga.App. 158, 162–63, 430 S.E.2d 378 (1993), *cert. denied* (citing *Castellana v. Conyers Toyota*, 200 Ga.App. 161, 165, 407 S.E.2d 64 (1991)). The common law of contracts clearly states that this Court may consider evidence beyond the contract documents to determine if the contract is void due to fraud. *Hinson v. Hinson*, 221 Ga. 291, 294, 144 S.E.2d 381 (1965). If parol evidence can be produced to show that the execution of the contract by the other party was fraudulently induced, then the defrauded party will have acted properly in rescinding

the contract in question. *See, e.g., City Dodge, Inc. v. Gardner*, 232 Ga. 766, 770, 208 S.E.2d 794 (1974), *reh'g denied.*

■ The salient question in the instant case is whether Plaintiff took any action to rescind the contract such that the event in question would not be covered by the insurance policy. The undisputed facts demonstrate that Plaintiff did not seek to rescind the contract for the month of July 1993. Therefore, it was in effect. Still, Plaintiff seeks to have this Court declare that it need not defend or indemnify RTTC for a July 23, 1993, event. Thus, what Plaintiff desires is reformation—not rescission—of the insurance contract so that it would exclude coverage for Medders. Under Georgia law, this Court can only construe and not revise the terms of this contract. *Kelson Companies, Inc. v. Feingold*, 168 Ga.App. 391, 393, 309 S.E.2d 394 (1983) (citation omitted). Though Plaintiff alleges that fraud in the inducement occurred in the present case, that determination cannot be reached because Plaintiff has taken a position inconsistent with that legal defense and therefore is now estopped from asserting fraud in the inducement as a basis for declaratory relief.

For Plaintiff to be able to void coverage from the inception of the policy, it would have to have taken all necessary steps to effect rescission of the policy, including, but not limited to, the return of all unearned premiums. *Haugseth v. Cotton States Mut. Ins. Co.*, 192 Ga.App. 853, 854–55, 386 S.E.2d 725 (1989). The Plaintiff insurer did not seek to void the policy from the inception because it accepted the payment of a premium for the month of July subsequent to becoming aware of the alleged fraud[4]. " 'The demand for payment in full of a future premium subsequently to the breach of a condition which would have entitled the insurer to insist upon a forfeiture of the contract will be held to be a waiver of the forfeiture....' " *State Farm Fire & Cas. Co. v. Jenkins*, 167 Ga.App. 4, 6, 305 S.E.2d 801 (1983), *writ of cert. vacated*, 251 Ga. 596, 310 S.E.2d 232 (1983) (quoting *Farmers Mut.*

---

4. The insurer received and accepted payment for the July coverage on August 5, 1993, after becoming aware of the alleged fraud on July 29, 1993.

**1564**

*Co-op. Fire Ins. Co. v. Kilgore,* 39 Ga.App. 528, 147 S.E. 725 (1929)).

Acceptance of premium payments presents the same result. In *Loeb v. Nationwide Mut. Fire Ins. Co.,* the Georgia Court of Appeals held that an insurer could not rely on a fraud argument when that insurer retained premiums subsequent to the purported cancellation of the policy. 162 Ga.App. 561, 562–63, 292 S.E.2d 409 (1982). Such actions indicated to that court that the insurer did not consider the policy void from the inception but, rather, in effect during the period for which the insurer received and retained premiums from the insured. *Id.* at 563, 292 S.E.2d 409. In this case, Plaintiff received a premium payment of $810 for the month of July insurance coverage *after* the company learned of the alleged fraud. The company retained the premium and took no steps to retroactively rescind the policy. In its brief opposing summary judgment, counsel for the Plaintiff admits that the insurer did not seek to retroactively rescind the policy and, as such, that RTTC's commercial fleet was insured by it from July 1 through July 31, 1993. (Pl.'s Br. Opp. Sum. J. at 12–13.) Further, the complaint for declaratory relief includes no allegations that Plaintiff acted to cancel or rescind July coverage. Therefore, under *Loeb* and *Jenkins,* the Plaintiff is estopped from relying on its fraud argument to now rescind the contract[5].

■■■ What Plaintiff truly desires this Court to do is to reform this insurance contract to exclude Medders, and Medders only, from coverage. Generally, a contract is rescinded *in toto. Johnson v. Frazier,* 121 Ga.App. 212, 213, 173 S.E.2d 434 (1970). A party cannot affirm a contract in part and then seek to rescind or repudiate it in part:

It is a well settled rule that if a party who is entitled to rescind a contract because of fraud or false representation, when he has full knowledge of all the material circumstances of the case freely and advisedly *does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with its repudiation,* it amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable even in equity.

*Woodall v. Beauchamp,* 142 Ga.App. 543, 545, 236 S.E.2d 529 (1977) (emphasis added). Read in conjunction with *Loeb* and *Jenkins,* it is seen that, by not seeking to repudiate the contract, the Plaintiff has effectively affirmed the contract particularly by accepting the premium for the month of July[6]. "It is incumbent upon a party who attempts to rescind a contract for fraud to repudiate it promptly on discovery of the fraud." *Woodall,* 142 Ga.App. at 545, 236 S.E.2d 529. Because Plaintiff has, by its actions, affirmed the contract and waived the fraud defense, the merger clause in the insurance contract is "determinative" in that it binds all the parties to the words as expressed in this contract which, on its face, is unambiguous. *Flair Fashions, Inc. v. SW CR Eisenhower Drive, Inc.,* 207 Ga.App. 78, 78–79, 427 S.E.2d 56 (1993).

It is undisputed that the insurance policy here in question declares that Plaintiff

will pay sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

Further, the policy defines as "insured" Taylor and "anyone else while using with [his]

---

**5.** Despite Plaintiff's protestations to the contrary, *Loeb* and *Jenkins* do not conflict with the Georgia Supreme Court's opinion in *Columbian Nat'l Life Ins. Co. v. Mulkey.* The *Mulkey* court noted that an insurance company might be estopped from asserting fraud in the inducement "if it should appear that after the discovery of such fraud the company did not promptly move to have the contract of insurance rescinded, but treated it as valid and binding and continued to receive premiums thereon." 146 Ga. at 272, 91 S.E. 106.

**6.** Plaintiff may argue that, by switching policy carriers, it acted to rescind the policy. That, however, would only be a prospective rescission effective August 1, 1993 and would not affect the incident in question. Further, Georgia law requires that the repudiation be clear and unequivocal to have the strength of law in this area. *See Roller–Ice, Inc. v. Skating Clubs of Georgia, Inc.,* 192 Ga.App. 140, 142–43, 384 S.E.2d 235 (1989) (upon discovery of fraud, offer to renegotiate terms of contract amounted to affirmative recognition of contract thereby foreclosing availability of avoiding or rescinding the contract).

permission a covered 'auto' [he] own[s]." It is undisputed that Medders drove the truck with the permission of Taylor, that Medders collided with another driver and caused bodily injury and property damages for which Medders and RTTC will likely be liable legally. Because the merger clause excludes the parol evidence of the letters between Taylor and Davis–Garvin, these facts and the clear language of the insurance contract are all that this Court need concern itself with here.

■ The provisions discussed above possess no inherent ambiguities which would require this Court to consider parol evidence for the purpose of clarification. Accordingly, parol evidence may not be used for Plaintiff's purposes of contravening the written portions of the integrated contract. "Parol evidence may be used to explain ambiguities, or aid in the construction of a contract, but it is clearly inadmissible to vary the terms of the written agreement." *State Farm Fire & Cas. Co. v. Fordham,* 148 Ga.App. 48, 51, 250 S.E.2d 843 (1978) (citation omitted). Additionally, "[w]here contractual provisions are unambiguous, interpretation of those provisions is a question of law for the court, and the court is not free to revise contracts while professing to construe them." *Kelson Companies,* 168 Ga.App. at 393, 309 S.E.2d 394 (citation omitted). Having reviewed the applicable facts and insurance contract provisions, this Court finds that, as a matter of law, the July 23, 1993, incident involving Medders is covered by the insurance policy in question.

There is no factual issue which needs to be resolved at trial and Defendants are entitled to judgment as a matter of law. Consequently, Defendants' Motion for Summary Judgment are granted as to Plaintiff's claim for declaratory relief based upon fraud in the inducement and as to the entirety of Plaintiff's Complaint for Declaratory Judgment.

This is not an opinion that this Court willingly makes. Here is another of life's examples where the person who breaks his word (RTTC's Ricky Taylor) profits from his broken promise. However, this Court cannot ignore Georgia law and, due to the insurer's oversight, is compelled to reward the broken word.

SO ORDERED: